UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MICHAEL WATSON, INDIVIDUALLY, AND AS FATHER AND NEXT FRIEND OF JOHN WATSON,<br><br>       Plaintiff,<br><br>v.<br><br>ELECTROLUX PROFESSIONAL OUTDOOR PRODUCTS, INC.,<br><br>       Defendant. | CIVIL ACTION<br>NO: 04-11782DPW |

**PLAINTIFF'S CONCISE STATEMENT OF MATERIAL FACTS TO WHICH THERE EXISTS A GENUINE ISSUE TO BE TRIED PURSUANT TO LR. 56.1**

  The Plaintiff hereby submits his Concise Statement of the Material Facts to Which There Exists a Genuine Issue to be Tried.  The Plaintiff first responds to the Defendant's Statement of Undisputed Facts and then provides a Statement of Additional Material Facts.  All references to Exhibits are to documents attached to Plaintiff's Opposition to the Defendant's Motion to Preclude Expert Testimony and for Summary Judgment.

I.  **Plaintiff's Response to Defendant's Statement of Undisputed Material Facts**

1.  Not disputed for the purpose of this Motion.

2.  Not disputed for the purpose of this Motion.

3.  Not disputed for the purpose of this Motion.

4.  Not disputed for the purpose of this Motion.

5.  Not disputed for the purpose of this Motion.

6.  Not disputed for the purpose of this Motion.

7. <u>Disputed</u> to the extent that paragraph 7 suggests that Mr. Watson knew that the saw blade would still be spinning after he descended the ladder. Mr. Watson testified that he didn't know specifically how long the blade continued to spin and that he thought it was only a matter of a few seconds before the blade came to a complete stop. (See Deposition of Michael Watson, p. 75., attached as **Exhibit 1** to Plaintiffs' Opposition).

8. Not disputed for the purpose of this Motion.

9. Not disputed for the purpose of this Motion.

10. Not disputed for the purpose of this Motion.

11. Not disputed for the purpose of this Motion.

12. <u>Disputed</u> to the extent that paragraph 12 suggests that the subject saw cannot be inadvertently activated because of the presence of an interlock mechanism. Plaintiffs' expert mechanical engineer, Leslie Wilder, tested an exemplar K2300 and found that the saw could be inadvertently activated under at least two circumstances. First, while holding the saw in one hand while wearing work gloves; and second, while gripping the saw with two hands so that the weight of the saw and the user's arm forces the saw toward the user causing his hand to depress the "trigger lock." (See Deposition of Leslie N. Wilder, P.E., pp. 86-91, 144-146, attached as **Exhibit 7** to Plaintiffs' Opposition and Letter from Leslie N. Wilder, P.E., attached as **Exhibit 8** to Plaintiff's Opposition.

13. Not disputed for the purpose of this Motion.

14. Not disputed for the purpose of this Motion.

15. <u>Disputed</u>. Mr. Watson testified that he didn't know if the blade that he was using was a

        12" blade or a 14" blade. (**Exhibit 1**, Depo. of M. Watson, p. 128).

16. <u>Disputed</u>. Mr. Watson testified that after finishing a cut, he would transfer his grip on the saw so it could be supported entirely by his left hand. He would then reach over with his right hand to make sure the cut was flush with the wall before again repositioning the saw in his left hand and then descending the ladder. (**Exhibit 1**, Depo. of M. Watson, pp. 97-100).

17. Not disputed for the purpose of this Motion.

18. <u>Disputed</u>. Mr. Watson testified that the saw came into contact with his leg after he let go of the front handle with his right hand and lowered it to his side. (**Exhibit 1**, Depo. of M. Watson, pp. 104-105).

19. Not disputed for the purpose of this Motion.

20. Not disputed for the purpose of this Motion.

21. Not disputed for the purpose of this Motion.

22. Not disputed for the purpose of this Motion.

23. Not disputed for the purpose of this Motion.

24. Not disputed for the purpose of this Motion.

25. Not disputed for the purpose of this Motion.

26. Not disputed for the purpose of this Motion.

27. <u>Disputed</u> to the extent that paragraph 27 suggests that Plaintiffs' expert Mechanical Engineer is an expert with respect to the individual products or only as to the products listed, rather than an expert in the fields of mechanical and electrical engineering. Mr. Wilder is a experienced mechanical and electrical engineer. He has a Bachelor's Degree

in Mechanical Engineering from Columbia University, a Master's Degree in Mechanical Engineering from Stanford University, and a Master's Degree in Electrical Engineering from New York University. (See Letter from Leslie N. Wilder, P.E. dated September 29, 2005, attached as **Exhibit 4** to Plaintiffs' Opposition).

28. Not disputed for the purpose of this Motion.
29. Not disputed for the purpose of this Motion.
30. Not disputed for the purpose of this Motion.
31. Not disputed for the purpose of this Motion.
32. Not disputed for the purpose of this Motion.
33. Not disputed for the purpose of this Motion.
34. Not disputed for the purpose of this Motion.
35. Not disputed for the purpose of this Motion.
36. Not disputed for the purpose of this Motion.
37. Not disputed for the purpose of this Motion.
38. Not disputed for the purpose of this Motion.
39. Not disputed for the purpose of this Motion.
40. Not disputed for the purpose of this Motion.
41. Not disputed for the purpose of this Motion.
42. Not disputed for the purpose of this Motion.
43. Not disputed for the purpose of this Motion.
44. Not disputed for the purpose of this Motion.
45. Not disputed for the purpose of this Motion.

46. <u>Disputed</u> to the extent that paragraph 46 suggests that mitre-saws and circular saws are substantially different than the subject saw such that a comparison between the products for the purpose of discussing an electronic brake is unreliable. Just like mitre-saws and portable circular saws, the subject saw is composed of an electrical motor that drives a circular blade at high speeds. (**Exhibit 7**, Depo. of L. Wilder, pp. 100-103, 141 and **Exhibit 4**, Wilder Sept. 29, 2005 letter). The technology to brake an electronic motor like the one in the subject saw has been available since the 1960's and "...involves switching the electrical current paths within the motor circuitry so that the motor effectively becomes a generator under load where electromagnetic fields are created that oppose continued rotation of the motor armature causing the kinetic energy of the spinning motor to be rapidly dissipated." (**Exhibit 3**, Wilder Sept 29, 2005, letter and Affidavit of Leslie N. Wilder, P.E., ¶ 3, attached as **Exhibit 4** to Plaintiffs' Opposition).

47. <u>Disputed</u>. The design of the subject saw is similar to that of many other saws on the market in that it is powered by an electric motor which operates to power a rapidly spinning blade. (**Exhibit 7**, Depo. of L. Wilder, pp. 100-103 and **Exhibit 4**, Wilder Sept. 29, 2005 letter) The Defendant's suggestion that saws like the subject saw are not used to make frequent or repetitive cuts is completely controverted by the testimony of Mr. Watson who indicated that he had been regularly using the subject saw to repeatedly cut rebar for the entire week prior to his accident. (**Exhibit 1**, Depo. of M. Watson, p. 71).

48. <u>Disputed</u> to the extent that paragraph 48 suggests that Mr. Wilder's testing is not scientifically reliable. In order to test the stopping time of a blade braking mechanism, Mr. Wilder used a DeWalt Mitre-saw with a blade brake incorporated into its design. Mr.

    Wilder mounted two 10" metallic blades on a the mitre-saw to simulate a load on the mitre-saw that was similar to the load created by an abrasive blade like the one mounted on the subject saw at the time of the accident. (**Exhibit 7**, Depo. of L. Wilder, pp. 111-112, **and Exhibit 4**, Wilder Sept. 29, 2005 letter, p. viii). The power output of the mitre-saw was almost identical to that of the subject saw in that they are both equipped with a 120 volt, 15 ampher, electric motor. (**Exhibit 7**, Depo. of L. Wilder, p. 118 and **Exhibit 4**, Wilder Sept 29, 2005 letter, p. viii). Using the stopping time in the tests with the mitre-saw for comparison, Mr. Wilder then calculated how long it would take to stop a 12" and 14" inch abrasive saw blade using the mechanism in the mitre-saw. His calculations revealed that a 12" and a 14" abrasive blade could be stopped in approximately 2 seconds. (**Exhibit 7**, Depo. of L. Wilder, pp. 114-115).

49. Not disputed for the purpose of this Motion.

50. Not disputed for the purpose of this Motion.

51. <u>Disputed</u>. Mr. Wilder's letter of March 24, 2006, was provided to counsel for the Defendant at 1:59 p.m. on Friday, March 24, 2006. Mr. Wilder deposition was scheduled to take place on Monday, March 27, 2006.

52. Not disputed for the purpose of this Motion.

53. <u>Disputed</u> to the extent that paragraph No. 53 suggests that Mr. Wilder's opinion regarding the interlock was based solely on the video showing Ove Donnerdal attempting to reconstruct Mr. Watson's accident. Mr. Wilder testified that as part of his initial analysis, he considered the interlock but did not anticipate that the saw could be inadvertently activated. (**Exhibit 7**, Depo. of L. Wilder, p. 81). Upon further reflection and additional

testing, Mr. Wilder found that under at least two separate conditions, the saw could be inadvertently activated. First, while holding the saw in one hand while wearing work gloves; and second, while gripping the saw with two hands such that the weight of the saw and the user's arm pulls the saw toward the user so that the user's hand depresses the "trigger lock." (**Exhibit 7,** Depo. of L. Wilder, pp. 86-91, 144-146).

54. Not disputed for the purpose of this Motion.

55. Not disputed for the purpose of this Motion.

56. Disputed, see Plaintiff's response to paragraph No. 53.

57. Not disputed for the purpose of this Motion.

58. Disputed. Mr. Wilder's March 24, 2006, letter not only identifies the design of the interlock but also provides three examples of how the "trigger lock" switch could be designed to avoid inadvertent activation. (See Letter from Leslie N. Wilder, P.E. dated March 24, 2006, attached as **Exhibit 8** to Plaintiffs' Opposition).

59. Not disputed for the purpose of this Motion.

60. Not disputed for the purpose of this Motion.

61. Not disputed for the purpose of this Motion.

62. Not disputed for the purpose of this Motion.

63. Not disputed for the purpose of this Motion.

64. Not disputed for the purpose of this Motion.

65. Not disputed for the purpose of this Motion.

66. Not disputed for the purpose of this Motion.

67. Not disputed for the purpose of this Motion.

68. Not disputed for the purpose of this Motion.

69. Not disputed for the purpose of this Motion.

70. <u>Disputed</u> to the extent that paragraph No. 70 suggests that Mr. Wilder did no tests to determine how Mr. Watson's accident took place. Mr. Wilder testified that he had conducted such tests. (**Exhibit 7**, Depo. of L. Wilder, p. 57). Mr. Wilder conducted a number of tests with an exemplar K2300, including simulation of the accident sequence, timing of the coasting blade, fast action photography to determine spin up time of the blade, cuts with the saw, manipulations to determine if the saw could be inadvertently activated and general handling of the saw to understand how it handled. (**Exhibit 7**, Depo. of L. Wilder, pp. 58-62, Mr. Wilder also examined other electric saws and conducted tests using similar saws equipped with blade braking mechanisms. (**Exhibit 7**, Depo. of L. Wilder, pp. 140-141).

71. <u>Disputed</u> to the extent that paragraph 71 suggests that Mr. Wilder cannot conclude, to a reasonable degree of engineering certainty, how the accident took place. Mr. Wilder explained that while he cannot say with certainty exactly how the accident took place, he can conclude, to a reasonable degree of engineering certainty, that the accident occurred either while the blade coasted down, while it was under power, or some combination of the two simply because of the extent of Mr. Watson's leg injury. (**Exhibit 7**, Depo. of L. Wilder, p. 82). Mr. Wilder can further conclude, to a reasonable degree of engineering certainty, that if the subject saw was equipped with a blade brake, the coasting down time of the saw would have been reduced to under two seconds. (Exhibit 4, Wilder Sept. 29, 2005 letter). He can further testify that, to a reasonable degree of engineering certainty,

that the presence of a effective interlock, the saw would not have been inadvertently activated. (**Exhibit 8**, Wilder March 24, 2006 letter). Finally, Mr. Wilder can conclude to a reasonable degree of engineering certainty that if both safety features were included in the design of the k2300 saw, that Mr. Watson's accident would have been avoided or his injuries seriously mitigated. (**Exhibit 7**, Depo. of L. Wilder, pp. 178-179 and **Exhibit 8**, Wilder March, 24, 2006 letter). .

72. Disputed. See Plaintiffs' response to Paragraph No. 71.

73. Disputed. Mr. Watson testified that, on the day of the accident, he had to push the "trigger lock" before he could activate the saw. (**Exhibit 1**, Depo. of M. Watson, p. 77). Mr. Watson did not deactivate the interlock at anytime on the subject saw. (Exhibit 2, Affidavit of M Watson, ¶ 1).

74. Not disputed for the purpose of this Motion.

75. Not disputed for the purpose of this Motion.

76. Not disputed for the purpose of this Motion.

77. Not disputed for the purpose of this Motion.

II. **Additional Statement of Material Facts**

1. On May 5, 2001, Michael Watson was working as a laborer for Modern Continental Construction Company on the I-93 tunnel project. (Exhibit 1, Depo. of M. Watson, p. 7 and 48).

2. On that day, Mr. Watson was working in a tunnel below the travel lanes cutting rebar that protruded from the tunnel walls. (**Exhibit** 1, Depo. of M. Watson. pp. 86-87).

3. The environment in which Mr. Watson was working was noisy and lit by portable lighting units. (**Exhibit** 1, Depo. of M. Watson., pp. 87-88 and 102).

4. To protect himself, Mr. Watson was wearing a hard hat, ear plugs, eye protection and work gloves, just as he always did. (**Exhibit 1**, Depo. of M. Watson, pp. 79, 94,102, and Exhibit 2, Affidavit of Michael Watson, ¶ 3).

5. In order to cut the rebar, Mr. Watson was using a model k2300 electric power saw manufactured by Partner, a division of Electrolux (See Photographs of exemplar k2300 attached to Plaintiff's Opposition as **Exhibit 3**).

6. The k2300 is essentially a simple machine which consists of an electric motor mounted in a housing. The motor drives a set of gears that in turn causes a blade mounted on front of the saw to spin rapidly. There is a front handle and a rear handle on the saw. It is equipped with a blade guard and an interlock mechanism.. The interlock mechanism requires that the button or "trigger lock" which is mounted just below the trigger and on the inside of the rear handle of the saw be pushed before the trigger can be pulled. (Exhibit 4, Wilder Sept. 29, 2005 letter, pp. vi-vii).

7. For the weeks prior to his accident, Mr. Watson had been frequently using the subject saw to cut rebar in the tunnel. During the week prior to his accident, Mr. Watson was the "saw guy" whose exclusive job it was to repeatedly use the subject saw to cut rebar from the wall. (**Exhibit 1**, Depo. of M. Watson, p. 72).

8. Prior to the day of the accident, Mr. Watson had no difficulty with any of the mechanisms or operation of the subject saw and, on the day of the accident, the interlock was operational. (**Exhibit 1**, Depo. of M. Watson, pp.73 and 77).

9. At no time did Mr. Watson deactivate the interlock on the subject saw. (**Exhibit 2**, Affidavit of M. Watson, ¶ 1).

10. The location of the rebar protruding from he wall varied from close to the floor to as high as the twenty foot ceiling (**Exhibit 1**, Depo. of M. Watson, p. 90).

11. At the time of his accident, Mr. Watson was cutting a piece of rebar located approximately 10 feet from the floor of the tunnel. (**Exhibit 1**, Depo. of M. Watson, p. 93).

12. In order to make the cut, Mr. Watson placed an aluminum ladder against the wall and climbed up to the fifth or sixth rung. (**Exhibit 1**, Depo. of M. Watson, p. 95).

13. While standing on the ladder, Mr. Watson grasped the saw by holding the rear handle with his right hand and the front handle with his left hand. (**Exhibit 1**, Depo. of M. Watson, p. 96-97).

14. After finishing the cut, Mr. Watson took his right hand off of the rear handle and deactivated the saw as he released the trigger. (**Exhibit 1**, Depo. of M. Watson, p. 99).

15. Mr. Watson then readjusted his left hand on the front handle of the saw and reached over with his right hand to make sure the cut rebar was flush with the wall (**Exhibit 1**, Depo. of M. Watson, pp. 97-98).

16. After determining that the rebar had been cut flush with the wall, Mr. Watson again repositioned his left hand on the front handle of the saw so that he could support the saw while holding onto the ladder with his right hand and descending the ladder (**Exhibit 1**, Depo. of M. Watson, pp. 100-101).

17. When he got to the bottom of the ladder, Mr. Watson took his right hand and gripped the

saw by the front handle then removed his left hand from the front handle and gripped the saw by the rear handle with his left hand. (**Exhibit 1**, Depo. of M. Watson, pp. 103-104).

18. After lowering the saw to his side and while gripping the rear handle of the saw with only his left hand, Mr. Watson felt the blade come into contact with his leg. (**Exhibit 1**, Depo. of M. Watson, pp. 103-104).

19. At first, Mr. Watson didn't know what happened, but when he went to take a step he could not feel his left foot and realized that he had been injured. (**Exhibit 1**, Depo. of M. Watson, p. 105).

20. Mr. Watson suffered deep lacerations to the peroneal nerves in his left leg as a result of the accident and has permanently lost feeling and control of his left foot which causes him the have difficulty with his balance and walk with an altered gait. (See Surgical Dictation from Boston Medical Center attached to Plaintiff's Opposition as **Exhibit 5**).

21. Mr. Wilder is a licensed professional engineer in three states. He has a Master's Degree in Mechanical Engineering from Stanford University and a Master's Degree in Electrical Engineering from New York University. He is a board certified forensic engineer and professional ergonomist. Mr. Wilder has been found qualified in a number of jurisdictions to testify as an expert engineer including testimony in the United States District Courts of New York, New Jersey and Connecticut. Mr. Wilder also has extensive practical experience in the market regarding all aspects of mechanical, electromechanical, and electronic product development, manufacturing and marketing. He has served as lead engineer, with the responsibility for product development and

      manufacturing, including four years with the Hopp Press Inc., two years with Mechtronic Corporation and five years as Director of Engineering at AMF Incorporated. Product lines for which Mr. Wilder has been responsible include lawn and garden tractors, exercise equipment, motorcycles, telephonic equipment, electronic measuring devices and electronic switches and relays.  Mr. Wilder holds fourteen patents which involved the design of electronic devices.  (**Exhibit 4**, Wilder Sept. 29, 2005 letter, p. iii).

22. Mr. Wilder has been an engineer for forty two years and has spent the last fifteen years as a forensic engineer investigating accidents on behalf of both plaintiffs and defendants that involve a range of mechanical and electric products.  He has investigated no fewer than 22 accidents that involved a variety of model power saws.  (See Affidavit of Leslie N. Wilder, ¶ 5 , attached to Plaintiff's Opposition as **Exhibit 6**).

23. Mr. Wilder's analysis of the subject accident, the product and his suggested alternative designs for the subject product involve the application of basic principles of engineering and physics in which he has thorough training and extensive experience. (**Exhibit 6**, Affidavit of L. Wilder, ¶ 2).

24. As part of his investigation of the accident, Mr. Wilder conducted a number of tests with an exemplar k2300 including a simulation of the accident sequence, timing of the coasting blade, fast action photography to determine spin up time of the blade, cuts with the saw, manipulations to determine if the saw could be inadvertently activated and general handling of the saw to understand its operational characteristics. (Exhibit 7, Depo. of L. Wilder, pp. 58-62).

25. Mr. Wilder also examined other electric saws and conducted tests using similar saws

equipped with blade braking mechanisms. (**Exhibit 7**, Depo. of L. Wilder, pp. 140-141).

26. As a result of his investigation, Mr. Wilder concluded that, to a reasonable degree of engineering certainty, Mr. Watson's injury could have been prevented or mitigated by the incorporation of both a blade brake mechanism and an effective interlock into the design of the k2300. (**Exhibit 7**, Depo. of L. Wilder, pp. 178-179).

27. Mr. Wilder explained that he does not know exactly how the accident took place, but that the presence of the deep laceration in Mr. Watson's left leg indicates that the blade was spinning at the time it came in contact with his leg. (**Exhibit 7**, Depo. of L. Wilder, pp. 71-72 and 82).

28. Based on his review of the evidence and testing, Mr. Wilder can conclude that, to a reasonable degree of engineering certainty, the two reasons that the blade could have been spinning when it contacted Mr. Watson's leg are 1.) that the saw did not have a blade brake to quickly reduce the coasting of the blade after deactivation or 2.) that the location of the interlock on the saw permitted Mr. Watson to inadvertently activate the saw while he was descending the ladder. (See Letter from Leslie N. Wilder dated March 24, 2006, attached to Plaintiff's Opposition as **Exhibit 8**).

29. Based on his review of the evidence, testing and the application of basic, generally accepted principles of safety in the power tool industry, Mr. Wilder concluded, to a reasonable degree of engineering certainty, that the subject saw could have been equipped with a blade brake and that the lack of a blade brake was one of two probable causes of Mr. Watson's accident. (**Exhibit 7**, Depo. of L. Wilder, pp. 178-179 and Exhibit 8, Wilder March 24, 2006 letter).

30. Blade braking mechanisms on electric saws with rotating blades are common, and the technology to employ such a mechanism on the subject saw has been readily available since the 1960's as indicated by multiple patents describing the design of such mechanisms. (**Exhibit 4**, Wilder Sept. 29, 2005 letter, pp. vii and x).

31. An abrasive blade on the subject saw measuring 12" or 14" could have been made to stop in approximately two seconds if a blade braking mechanism had been incorporated into the design of the k2300. (**Exhibit 4**, Wilder Sept. 29, 2005 letter, p. viii and **Exhibit 7**, Depo. of L. Wilder, pp. 116-118).

32. Based on his review of the evidence, testing and the application of basic, generally accepted principles of safety in the power tool industry, Mr. Wilder also concluded, to a reasonable degree of engineering certainty, that the subject saw could have been equipped with an effective interlock and that the lack of an effective interlock was one of two probable causes of Mr. Watson's accident. (**Exhibit 7**, Depo. of L. Wilder, pp. 178-179 and **Exhibit 8**, Wilder March 24, 2006 letter).

33. Interlocks designed so that the user could not readily reactivate the saw when he did not intend to are commonly applied in the power tool industry. (**Exhibit 6**, Affidavit of L. Wilder, ¶ 4).

34. Mr. Wilder proposed several different designs for the interlock on the k2300 which would have prevented the accident including having the "trigger lock" component of the interlock mechanism "...recessed, guarded, or positioned away from an operator's normal operating grip on the handle". (**Exhibit 8**, Wilder March 24, 2006 letter).

35. Electrolux established that the interlock could be better designed by changing the location

of the "trigger lock" component of the interlock from inside the rear handle of the saw to a location on the side of the rear handle when it designed and manufactured the k3000 electric saw, which is the successor model to the k2300. (See Deposition of Sven Lennart Gustafsson, pp. 76-79 attached as **Exhibit 9** and Photograph of the k3000 attached as **Exhibit 10**).

                                         Respectfully submitted
                                         The Plaintiff
                                         By his attorneys

                                         /s/ Jonathan E. Tobin
                                         Jonathan E. Tobin (641509)
                                         Thomas Drechsler (134840)
                                         FINNERAN BYRNE & DRECHSLER, LLP
                                         50 Redfield St.
                                         Boston, MA 02122
                                         617-265-3900

## CERTIFICATE OF SERVICE

    I, Jonathan E. Tobin, hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and that paper copied will be sent to those indicated as non-registered participants on June 9, 2006.

                                         /s/ Jonathan E. Tobin
                                         Jonathan E. Tobin