UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

MICHAEL WATSON, INDIVIDUALLY,
AND AS FATHER AND NEXT FRIEND
OF JOHN WATSON, PPA
    Plaintiff

v.

ELECTROLUX PROFESSIONAL
OUTDOOR PRODUCTS, INC.
    Defendant

CIVIL ACTION NO. 04-11782 DPW

## DEFENDANT'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO PRECLUDE EXPERT TESTIMONY AND FOR SUMMARY JUDGMENT

### Introduction

In his opposition, Watson does not dispute the fundamental premise of Electrolux's motion: that because he does not know whether he was injured by a powered or a coasting blade, Watson must establish that the subject power cutter was defectively designed in *both* of the ways Watson claims, and likewise, to avoid summary judgment, must show that expert Wilder's proposed testimony with regard to *both* his blade-brake theory and his trigger-lock theory is admissible. *Forlano v. Hughes,* 393 Mass. 502, 507-508 (1984); *Carey v. General Motors Corp.,* 377 Mass. 736, 740 (1979). Conversely, if Electrolux demonstrates that either one of Wilder's proposed theories of design defect should be precluded, its motion must succeed.

### Wilder's Trigger-Lock Theory

In Watson's "Additional Statement of Material Facts" and in his opposition memorandum, he suggests that on a later model power cutter, the K3000, Electrolux relocated the trigger lock in order to reduce the likelihood of inadvertent activation of the saw—the risk on which Watson's trigger-lock theory of defect is based. *See* Plaintiff's Statement of Additional

Facts, ¶ 35; Opposition Memorandum at 18. This suggestion is false. As is made clear by the Rule 30(b)(6) deposition testimony of Lennart Gustafsson, the interlock was moved from the rear handle of the K2300 to the side of the K3000 because "many people missed where the interlock was on the 2300. They never saw it, and they couldn't start the saw." Gustafsson Deposition, Plaintiff's Exhibit Exh. 9, at 77-78; *see also* K3000 EL Operator's Manual, Exhibit A hereto, at 4. Simply put, even assuming that the evidence concerning the subsequent design change would be admissible notwithstanding Fed. R. Evid. 403, the evidence undisputedly tends to show that trigger activation (including the hypothetical unintended activation) would if anything be *more* difficult, not less, under the subject design than under this alternative design.

Watson's opposition does not dispute that Wilder's trigger-lock opinion is not based on any research or data concerning the frequency of power cutter accidents resulting from inadvertent activation of the saw. *See* Electrolux's Statement of Undisputed Facts ("U.F."), ¶ 57.[1] Wilder's opinion thus involves no consideration whatever of "the gravity of the danger posed by the challenged design . . . (or) the likelihood that such danger would occur." *Back v. Wickes Corp.*, 375 Mass. 633, 640-41 (1978).

Likewise, Watson provides no more than token opposition to Electrolux's point that Wilder's proposed alternative "design" for the trigger lock consists of nothing more than several "concepts or approaches" developed solely for this case, none of which he ever designed, tested, used, or discussed with any other engineer. *See* Electrolux's U.F., ¶¶ 51-65. These "redesigns" by Wilder, which utterly fail to consider feasibility or any adverse consequences to the power cutter in terms of safety or utility, are plainly insufficient to be admissible or to support a verdict for Watson. *See Fidalgo v. Columbus McKinnon Corporation*, 56 Mass. App. Ct. 176 (2002)

---

[1] As noted, Wilder first arrived at the view that unintentional activation might be a risk after watching a video demonstration of the accident in which, unbeknownst to Wilder, the inter-lock had been disabled before the saw was started. U.F. ¶¶ 52, 54 and 55.

(holding that expert's "rough sketches" and "very crude model" failed to demonstrate a feasible redesign for a latched hook).

Finally, Watson fails to address the point that even assuming a jury had a sufficient basis on which to conclude that the trigger-lock design rendered the saw defective, and even if the jury were permitted to conclude that Watson's accident might have been caused by his inadvertent starting of the saw, the jury would have no rational, non-speculative basis for drawing a causal connection between the particular design issue identified by Wilder and the accident that occurred. Putting the point another way, it would require pure speculation to conclude that any of Wilder's proposed redesign concepts for the trigger lock (including the design of the trigger lock on the K3000 saw) would have prevented Watson's accident, and that it would not have happened in any event. Thus, even if Wilder's proposed trigger-lock testimony were somehow admissible as to Watson's alleged design defect, it would nevertheless be insufficient to prove that the subject design was the cause of Watson's accident.

### Blade-Brake Opinion

Watson's opposition also fails to address the fatal lack of reliability in Wilder's other proffered opinion, likewise developed specifically for this litigation, that the power cutter was defectively designed because it lacked a blade brake. Watson seeks to avoid the undisputed evidence (1) that Wilder is unaware of any information concerning the frequency or severity of "coasting" accidents with power cutters; (2) that no power cutter is equipped with a blade brake and (3) that Wilder never designed or tested a power cutter with a blade brake, by merely asserting, in conclusory fashion, that a power cutter is a "simple machine" and that Electrolux somehow has the burden of showing that blade brakes on other types of saws cannot be readily applied to power cutters. *See* Plaintiff's Statement, ¶ 6; Plaintiff's Memorandum at 12-13.

However, the feasibility and practicality of incorporating blade brakes on all power cutters, without adverse consequences to the overall design of the product for all its intended uses, is not such a self-evident proposition that Electrolux must *disprove* it in order to attack the reliability of Wilder's opinion. Rather, it is of course *Watson's* burden to establish that Wilder's opinion is sufficiently reliable to be admissible. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) at n. 10. Watson clearly has not carried this burden merely by arguing that other kinds of saws with blade brakes are in relevant respects comparable to the subject power cutter.

Similarly, Watson's attempts to excuse Wilder's lack of information about the extent of the alleged danger posed by coasting blades is unavailing. Watson argues that the danger of a "spinning" or "rotating" blade is so obvious that no research by Wilder was required. *See* Plaintiff's Memorandum at 14. But the alleged risk at issue here is much more precise—that of a blade rotating while not under power—and the scope of that alleged risk is by no means so obvious as to permit an expert's *ipse dixit*.

Furthermore, Wilder's failure to test any blade brake on a power cutter is not cured, as Watson suggests, by the expert's "tests" to determine (1) the stopping time of the blade of a miter saw and, by extension, of the power cutter had it been equipped with a blade brake, or (2) how long it would take Watson to climb down the ladder. *See* Plaintiff's Memorandum at 11-12. These "tests," at best, relate to the causation issue—i.e., the question of whether a blade brake would have prevented Watson's injury, assuming it was caused by a coasting blade. But it is undisputed that Wilder never designed, much less tested, a blade brake on a power cutter to determine feasibility (*See* U.F. ¶ 50) which fatally undermines his opinion that the power cutter was defectively designed because it lacked a blade brake.

4

### Wilder's Warning Opinions

Wilder does not dispute any of Electrolux's Undisputed Material Facts with respect to Wilder's warning opinions. *See* Electrolux's U.F. ¶¶ 66-69.[2] Moreover, in his opposition, Watson does not even raise any argument in response to Electrolux's contention that it is entitled to summary judgment on Watson's warning claims. *See* Plaintiff's Memorandum. The deficiencies in Watson's design defect theories are clearly not cured by his addition of a failure to warn claim.

### Conclusion

For the reasons stated herein and in its original Memorandum, summary judgment should be granted in favor of Electrolux.

---

[2] Watson misleadingly disputes Electrolux's U.F. ¶ 7, which states in relevant part that "Watson understood that the blade continued to turn or 'coast' for some period of time before stopping. Watson also knew that he could be hurt if the still-spinning blade contacted his body, and that he had to be careful to keep the coasting blade away from him even if it was not under power." Contrary to Watson's dispute of this fact, Watson never "testified . . . that he thought it was only a matter of a few seconds before the blade came to a stop." Instead, Watson testified that although he did not know how long it took the blade to come to a stop, he knew that "*it was a matter of a number of seconds.*" Watson Dep., Exhibit A to Electrolux's Motion, at 75. (Emphasis supplied).

5

ELECTROLUX PROFESSIONAL OUTDOOR
PRODUCTS, INC.,
By its Attorneys,


/s/ David A. Barry
David A. Barry, BBO No. 031520
Sugarman, Rogers, Barshak & Cohen, P.C.
101 Merrimac Street, 9th Floor
Boston, MA 02114-4737
(617) 227-3030
barry@srbc.com

/s/ Suleyken D. Walker
Suleyken D. Walker, BBO No. 654933
Sugarman, Rogers, Barshak & Cohen, P.C.
101 Merrimac Street, 9th Floor
Boston, MA 02114-4737
(617) 227-3030
walker@srbc.com

DATED: June 16, 2006


## CERTIFICATE OF SERVICE

I, David A. Barry, hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on June 16, 2006.

/s/ David A. Barry
David A. Barry
barry@srbc.com

378811