UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

MICHAEL WATSON, INDIVIDUALLY,
AND AS FATHER AND NEXT FRIEND OF
JOHN WATSON,

                      Plaintiff,

v.

ELECTROLUX PROFESSIONAL
OUTDOOR PRODUCTS, INC.,

                      Defendant.

CIVIL ACTION
NO: 04-11782DPW

**PLAINTIFF'S MOTION TO RECONSIDER AND OPPOSITION TO THE
DEFENDANT'S MOTION TO RECONSIDER**

The Plaintiff hereby submits this Motion to Reconsider the Court's decision regarding the Defendant's Motion for Summary Judgement and further opposes the Defendant's Motion to Reconsider same. As grounds for his Motion, the Plaintiff states that the Court's decision not to permit plaintiff's expert Mechanical Engineer to testify regarding the defective interlock on the subject saw runs counter to the purpose of *Daubert*, because the expert's opinions are based on generally-accepted principles of mechanical engineering and were developed using the experience, training, methods, observation and reasoning of a qualified expert. Plaintiff further states that this Court's decision to permit the Plaintiff to present the case to be presented to the jury based upon the defective blade brake theory correctly interprets the governing case law. Plaintiff can maintain his burden at trial by presenting evidence which will permit a jury to find that Mr. Watson's accident likely resulted from a cause for which the defendant was responsible

1

rather than from causes for which it is not responsible.

A.  **The Testimony of Plaintiff's Expert Mechanical Engineer Regarding the Defective Interlock on the Subject Saw is Based on Generally-Accepted Principles of Engineering, Rests on a Sufficient Foundation to be Reliable and is Far Removed from the "Junk Science" that *Daubert* and its Progeny were Intended to Preclude.**

The purpose of *Daubert* and its progeny is to prevent "junk science" from being presented to the jury. But principles which are generally accepted should not be the subject of exclusionary rulings. *Columbo v. CMI Corp.* 26 F.Supp 2d 574, 575-576 (W.D.N.Y. 1998); *Liriano v. Hobart Corp.* 949 F.Supp. 171, 177 (S.D.N.Y. 1996)(Daubert exclusion generally applies to cases involving unique, untested or controversial methodologies and techniques.) *Daubert* should not be permitted to be used to limit the presentation of expert testimony that would have traditionally been found admissible under Rule 702. *Lappe v. American Honda Motor Co., Inc.*, 857 F.Supp. 222, 228 (N.D.N.Y. 1994)(*Daubert* only prescribes judicial intervention for expert testimony approaching the outer boundaries of traditional scientific knowledge), *MacCleery v. Royce Union Bicycle, Inc.*, 1996 WL 442707 (D. N.H. 1996)(Where expert opinion involves well-established as opposed to novel propositions and theories, the gatekeeper function of the Court is reduced).

In this case, the Plaintiff has offered the testimony of a professional Mechanical Engineer with years of experience, Leslie Wilder, P.E., regarding the defective nature of the interlock on the subject saw and alternative designs which would have prevented the accident. Mr. Wilder provided several examples of manufacturers who have designed interlocks into their electric power tools. (**Exhibit 6** to Doc. # 27, Affidavit of L. Wilder, ¶ 4). This is clear and undisputed evidence that the problem of inadvertent activation and the use of interlocks to prevent inadvertent activation are generally-accepted principles among mechanical engineers and

designers in the powertool industry. The fact that the subject saw was designed with an interlock is also evidence that inadvertent activation is possible and that it poses a risk to users on the subject saw. Mr. Wilder suggested three alternative designs which are already employed on power tools in the industry that would have prevented the accident. (**Exhibit 8** to Doc. 27, L. Wilder March 2006 Letter). Thus, Mr. Wilder's opinions regarding the defective interlock are not novel and are based on generally accepted engineering principles regularly employed and well-established in the power tool industry. This is not the "junk science" that *Daubert* and the Court's "Gate Keeping" function is supposed to preclude.

   The Court, in its Memorandum and Order, seems to indicate that, for Mr. Wilder's testimony regarding the defective interlock to be admissible, he should have to engage in additional "rigorous or systematic" testing with respect to the ability of the subject saw to be inadvertently activated and to test the ability of his alternative designs to have prevented the accident. (Doc. # 31, Memorandum and Order, p. 18). However, individual testing of the subject saw with each of Mr. Wilder's suggested interlock designs is not required to render his opinion reliable enough to be presented to a jury. *Bilter v. A.O. Smith Corporation*, 391 F.3d 1114, 1123 (10th Cir. 2004)(Individual testing of theory not always needed to establish reliability, particularly where the hazard is well known), *Morales v. E.D. Entyre & Co.*, 282 F.Supp.2d 1252, 1270 (D. N.M. 2005)(Testing not needed to establish reliability where opinions are based on experts personal experience, training, method of observation and deductive reasoning). Mechanical Engineering is an established field where reliance on experience and industry standards is reasonable without independent study. *Liriano v. Hobart Corp.*, 949 F.Supp. at 177 (Reliability can be determined without resort to the *Daubert* factors where opinions are based on

expert's years of learning and insight) *Lappe* v. *American Honda Motor Co.*, 857 F.Supp. at 228 (Expert mechanical engineer need not perform independent tests to determine crashworthiness where he relied on his investigation, observation, experience and calculations).

With respect to the ability of the saw to be inadvertently activated, it is clear from the list of manufacturers provided and the predominance of electric power tools equipped with interlocks, that inadvertent activation is a well-known danger in the powertool industry. Mr. Wilder examined the operational characteristics of the subject saw, carefully reviewed Mr. Watson's description of the accident and repeatedly performed testing of his interlock theory with an exemplar saw. He was able to reproduce two scenarios were the saw could have been inadvertently activated based on the accident sequence as described by Mr. Watson. (Exhibit 7 to Doc # 27, Depo. of L. Wilder pp. 86-91, 144-146). Thus, Mr. Wilder's opinions regarding a well-known hazard, inadvertent activation of power tools, are based not only on generally-accepted engineering principles, but also on his own training, experience, observations and deductive reasoning as an experienced Mechanical Engineer. This is sufficient to render Mr. Wilder's opinions admissible. Moreover, it is not known what other types of testing beyond repeatedly reenacting the accident sequence as described by Watson could have been performed to test the inadvertent activation theory.

Mr. Wilder's conclusions that an alternative designed interlock would have prevented an accident are also similarly grounded and admissible. Mr. Wilder first points out that interlocks are widely used in the industry by many different manufacturers to prevent inadvertent activation. He then proposed alternative designs that involve the basic application of the principles of physics that make it virtually impossible for the subject saw to have been inadvertently activated.

4

Put another way, had there been a barrier over the plunger or had the plunger been recessed into the tool housing, it would have been close to impossible to depress the plunger thereby permitting the trigger to be squeezed and the saw activated. There is no need to do testing to prove basic principles of natural science. *Biltner v. A.O. Smith Corp.*, 391 F.3d 1123. Nor is there a need to do testing to establish the feasibility of technology that has already been widely incorporated into electric power tools. *Larue v. National Union Electric Corp.*, 571 F2d 51, 57 (1st Cir. 1978).

In sum, Mr. Wilder's opinions regarding the defective interlock should be permitted to be presented to the jury. His opinions are based on generally-accepted principles and the method by which he arrived at those opinions are sufficient to satisfy the reliability standard set by Daubert and its progeny. Any infirmities in the testimony go to the weight and can be evaluated by the jury after cross examination by the defendant. It should also be noted that the Court's initial decision to exclude testimony regarding the interlock will be difficult to reconcile at trial. This is because the Defendant will seek to question Mr. Wilder about inadvertent activation as a possible alternative cause for the accident. Any suggestion by the Defendant that the accident was caused by the inadvertent activation of the saw, when the Defendant has already taken the position that the same opinion offered by Mr. Wilder lacks any reasonable scientific foundation, would "open the door" to permit the Plaintiff to question Mr. Wilder about his opinions regarding the subject of inadvertent activation, how inadvertent activation is possible with the existing design and the how the design could be altered to prevent inadvertent activation.

For these reasons, the Plaintiff respectfully requests that this Court reconsider its ruling and permit the Plaintiff to present expert testimony regarding the interlock theory.

**B.    The Defendant's Motion to Reconsider Should be Denied Because The Plaintiff Can Sustain His Burden at Trial and Should be Permitted to Present His Case to the Jury.**

Even if Plaintiff is not permitted to present Expert testimony regarding the interlock , he can still sustain his burden by showing that there was a greater likelihood or probability that Mr. Watson's accident was due to a cause for which the defendant was responsible rather than from other causes for which it was not responsible. *Carey v. General Motors Corporation*, 377 Mass. 736, 740 (1979), cited with approval in *Samos Imex Corp. v. Nextel Communications, Inc.*, 194 F3d 301, 304 n1 (1999); *Damon v. Sun Company*, 87 F3d 1467, 1472 (1996). Mr. Wilder will testify that, to a reasonable degree of engineering certainty, the lack of a blade brake on the subject saw likely caused, or contributed to cause, Mr. Watson's accident. (**Exhibit 4** to Doc. # 27, L. Wilder Sept. 2005 Letter).  Contrary to the Defendant's assertion, such testimony carries Plaintiff's burden of identifying a likely cause for which the Defendant is responsible and excludes other causes for Mr. Watson's injury for which it is not responsible.  For example, such testimony will permit the jury to exclude other causes of Mr. Watson's injury such as falling from the ladder, product malfunction, intentional deactivation of the safety devices on the product and even intentional injury.  As the Court noted in its Memorandum and Order, no other reasonable explanation for the injury has been proffered except the poor design of the saw in not being equipped with a blade brake.  Under such circumstances, the Plaintiff has met his burden of identifying a more likely cause of the accident for which the Defendant is responsible.

The suggestion that Mr. Wilder cannot determine with certainty if the blade was coasting or under power at the time of the injury does not preclude him from testifying that the lack of a

blade brake was a likely cause of the injury. Mr. Wilder will testify that, to a reasonable degree of engineering certainty, one scenario which likely caused Mr. Watson's injury was that the blade on the subject saw remained spinning after deactivation. (**Exhibit** 4 to Doc. # 27, L. Wilder Sept. 2005 Letter).  He further testified that a blade brake would have rapidly slowed the spinning blade to a point where it was no longer dangerous. *Id*.  Finally, Mr. Wilder testified that the saw could have been activated again while Mr. Watson was descending the ladder or while he was switching hands. (**Exhibit 7** to Doc. # 27, Depo. of L. Wilder, pp. 86-91 , 144-146). Thus, the saw could have been activated, and the blade under power, at a point very close to Mr. Watson's leg.  Even if the blade was under power at the point that it contacted Mr. Watson, immediate deactivation would have caused the blade brake to slow the spinning blade, thereby preventing it from doing damage to the extent and nature caused from continued power to the blade as it cut into Mr. Watson's leg.  Mr. Wilder may not be able to say with absolute certainty if the blade was powered or coasting at the time it contacted Mr. Watson, but that is not required.  He can say to a reasonable degree of certainty that the blade would likely have slowed very quickly with a blade brake when the saw was deactivated and that it would have prevented or mitigated the injury.  Plaintiff is not required to determine with certainty how the accident happened.  It is sufficient that he present evidence to the jury which would permit the jury to conclude that it is more likely that the accident occurred in the manner suggested by Plaintiff's expert and that the cause of the accident was due to something for which the Defendant was responsible. Thus, the Defendant's claim that because Mr. Wilder cannot say if the blade was spinning or powered at the time of the injury does not preclude the Plaintiff from presenting evidence that the injury was caused by the lack of a blade brake.

## CONCLUSION

For all of the above reasons, the Plaintiff requests that this Court reconsider its decision to preclude Plaintiff's expert from testifying regarding the interlock. The Plaintiff further requests that this Court deny the Defendant's request grant Summary Judgment in its favor.

>Respectfully submitted
>The Plaintiff
>By his attorneys
>
>/s/ Jonathan E. Tobin
>Jonathan E. Tobin (641509)
>Thomas Drechsler (134840)
>FINNERAN BYRNE & DRECHSLER, LLP
>50 Redfield St.
>Boston, MA 02122
>617-265-3900

## CERTIFICATE OF SERVICE

I, Jonathan E. Tobin, hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and that paper copied will be sent to those indicated as non-registered participants on August 23, 2006.

>/s/ Jonathan E. Tobin
>Jonathan E. Tobin