UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

MICHAEL WATSON, INDIVIDUALLY,
AND AS FATHER AND NEXT FRIEND OF
JOHN WATSON,

                       Plaintiff,

v.

ELECTROLUX PROFESSIONAL
OUTDOOR PRODUCTS, INC.,

                       Defendant.

CIVIL ACTION
NO: 04-11782DPW

**PLAINTIFF'S SUPPLEMENTAL MOTION TO RECONSIDER**

Pursuant to the Court's Order of September 28, 2006, The Plaintiff hereby submits this Supplemental Motion to Reconsider and requests that the Court permit his expert mechanical engineer to testify regarding both the Blade Brake and Interlock theories of defect. In the event that this Court does not permit the Plaintiff's expert witness to testify regarding the Interlock theory of defect, the Plaintiff can still sustain his burden of proof such that the case may proceed to trial.

A.    <u>A Qualified Expert Whose Opinions are Based on His Training, Experience, Method of Observation and Deductive Reasoning Should be Permitted to Testify.</u>

In support of his Motion to Reconsider, the Plaintiff relies upon *Bitler v. A.O. Smith Corp.* where the 10th Circuit Court of Appeals permitted an expert fire investigator to testify regarding the cause of a fire even though his opinions were not subject to peer review and were based on his training, experience, method of observation and deductive reasoning. *Bitler v. A.O. Smith Corp.* 391 F.3d 1114, 1122 (10th Cir. 2004). Citing the reasoning in *Bitler*, the

1

Massachusetts District Court recently held that an expert ballistics examiner could testify to opinions based on the expert's own personal experience and training even though there were no objective industry standards upon which to base the opinion. *United States v. Monteiro*, 407 F.Supp.2d 351, 371 (D. Mass. 2006) citing *Bitler,* 391 F.3d 1114, 1122. Similarly, the First Circuit recently permitted a medical expert to testify where his opinions did not involve novel medical theories and were based upon the expert's knowledge and training. *Feliciano-Hill v. Principi*, 439 F.3d 18, 25 (1st Cir. 2006) citing *Bitler*, 391 F.3d 1114, 1123. By citing *Bitler* in two recent cases, it is clear that Courts in the First Circuit should permit a qualified expert to testify where his opinions are based on the expert's own training, experience, method of observation and deductive reasoning.

In the instant case, the Court has recognized that Plaintiff's expert, Leslie Wilder, P.E., is qualified to render opinions in the fields of mechanical and electrical engineering. (Doc. # 31, Memorandum and Order, p. 8). Mr. Wilder has 15 years of investigating industrial accidents and has investigated more than 20 accidents involving powered saws. (See Affidavit of Leslie Wilder, ¶ 5, attached as **Exhibit A**). A mechanical engineer, like a fire investigator, ballistics examiner or medical doctor, has special training in the application of scientific principles commonly employed in their respective professional fields. Mr. Wilder developed his opinions for this case, particularly his opinions regarding the defective interlock, by applying the basic principles of mechanical and electrical engineering and employing investigative techniques that are well accepted in his field. (**Exhibit A**, Affidavit of L. Wilder, ¶ 2). Mr. Wilder conducted repetitive testing with an exemplar saw under conditions described by Mr. Watson who was the only witness to the accident. (See Excerpts from the Deposition of Leslie Wilder, pp. pp. 86-91,

144-146, attached as **Exhibit B**). Based on his training, testing, observations and experience, Mr. Wilder reasoned that one way to explain Mr. Watson's accident was that the saw was inadvertently activated at some point while Mr. Watson descended the ladder and transferred the saw from one hand to the other. *Id*. This is the same type of investigation and deductive reasoning which the Courts in the cases cited above found to satisfy the reliability standard called for by *Daubert*.

      After determining that the accident could have occurred as a result of inadvertent activation of the saw, Mr. Wilder applied well established principles of interlock design to arrive at an opinion that an alternatively designed interlock using a barrier, recessed or relocated design would likely have prevented the accident. (**Exhibit B**, Depo. of L. Wilder, pp. 146-149). Mr. Wilder identified other power tool manufacturers who use these alternative designs. (**Exhibit B**, Affidavit of L. Wilder, ¶ 4). The prevalence of interlocks on other power tools and similar power saws is undisputed proof that Mr. Wilder's opinion is well tested, generally accepted and far from novel. This is also sufficient to satisfy the reliability standard called for by *Daubert*. *Jodoin v. Toyota Motor Corp.*, 284 F.3d 272, 281 (1st Cir. 2002)(Testing on similar product admissible as to issue of feasibility); *Estate of Spinosa*, 621 F2d. 1154, 1161 (1st Cir. 1980)(Design of similar product admissible on issue of feasibility); *Larue v. National Union Elec. Corp.*, 571 F2. 51, 57 (1st Cir. 1978)(Evidence of safety devices on similar products admissible for purpose of showing feasibility on subject product).

      Plaintiff respectfully urges this Court to reconsider its ruling regarding the reliability of Mr. Wilder's Interlock theory. It is not a novel theory and does not approach the outer boundaries of science which the Court should be skeptical about. The opinion was reached by

conducting a thorough investigation and using deductive reasoning based on the available information and application of specialized scientific principles of mechanical and electrical engineering.  It is a sufficiently reliable opinion to satisfy the *Daubert* standard and Plaintiff should be permitted to present his case to the jury.

B.      Plaintiff Can Sustain His Burden at Trial Even If His Expert Is Only Permitted to Testify Regarding the Blade Brake Theory of Defect.

Plaintiff can sustain his burden at trial based on just the Blade Brake theory of defect because expert testimony will establish that there was a greater probability that Mr. Watson's accident was due to a cause for which Electrolux was responsible, rather than from any other cause for which Electrolux was not responsible. *Carey v. General Motors Corporation*, 377 Mass. 736, 740 (1979), cited with approval in *Samos Imex Corp. v. Nextel Communications, Inc.*, 194 F3d 301, 304 n1 (1999); *Damon v. Sun Company*, 87 F3d 1467, 1472 (1996).  At the trial, Mr. Wilder will testify, to a reasonable degree of engineering certainty, that the presence of a Blade Brake on the subject saw would have prevented or mitigated Mr. Watson's injury because it would have stopped or rapidly decelerated the spinning blade. (See **Exhibit B**, Depo. of L. Wilder, p. 105, 178-179).  This opinion testimony has been found to rest on a sufficiently reliable foundation such that it may be presented to the jury. (Doc. # 31, Memorandum and Order, pp. 12-13).  The testimony permits the jury to find that the design of the subject saw, specifically its lack of a blade brake, was the most likely the reason that the accident occurred.

Mr. Wilder has suggested, given the available information and his testing, that he cannot be absolutely certain if the blade was under power or if it was coasting at the instant that the blade contacted Mr. Watson's leg. (**Exhibit B**, Depo. of L. Wilder, pp. 178-179).  However, Mr. Wilder did testify that the Blade Brake would have stopped or rapidly slowed the blade once the

power was shut off such that the Blade Brake would have brought the spinning blade to a complete stop within two seconds. *(Id.* at pp. 114-115). He has also testified that the presence of the blade brake would have prevented or mitigated the injury. *(Id.* at pp. 105, 178-179). Without the Blade Brake mechanism, the blade could continue to spin for up to 20 seconds. *(Id.* at pp. 96-97). Mr. Watson testified that he was lowering the saw to his side when he was cut. (See Deposition of M. Watson, pp. 112-113 attached as **Exhibit C**). In the process, he released the trigger as his hand slid to the back of the rear handle because the weight of the saw pulls the interlock and trigger away from the user's hand. (Doc. No. 22-2, Memorandum in Support of Defendant's Motion to Preclude Expert Testimony and for Summary Judgment, p. 15 n. 59). Consequently, if the saw was activated close to the time when it contacted Mr. Watson's leg, or even if it was under power at the time it contacted Mr. Watson's leg, the Blade Brake mechanism would have quickly stopped or slowed the blade within two seconds of when the trigger was released and the Blade Brake was activated. (**Exhibit B**, Depo. of L. Wilder, pp. 114-115). This opinion is entirely independent of Mr. Wilder's Interlock theory of defect and rests on the methodology that this Court has already found reliable. While Plaintiff maintains that the jury would be better served if it were permitted to consider Mr. Wilder's opinions that the subject saw would be much safer with both the Blade Brake and a well-designed interlock, Plaintiff can proceed with just the Blade Brake theory and meet his burden of proof at the trial.

    It should also be noted that under the Court's current ruling, the jury should not be able to consider the possibility that the saw was inadvertently activated such that it was under power when it struck Mr. Watson's leg because the Defendant has taken the position that there is absolutely no valid scientific basis upon which to suggest such an event occurred. (Doc. #22-2,

Memorandum in Support of Defendant's Motion to Preclude Expert Testimony and for Summary Judgment, pp. 10-16). While the Plaintiff respectfully disagrees, the Defendant, by taking this position and having the Court rule in its favor, is estopped from arguing in the opposite at trial that Mr. Watson inadvertently reactivated that saw such that it was under power when he reached the bottom of the ladder. *New Hampshire v. Maine*, 121 S.Ct. 1808, 1814 (2001)(Judicial Estoppel prevents a party from taking a position in one phase of the case then relying on a contradictory position to prevail in another phase); *Beaudette v. Louisville Ladder, Inc.*, 2006 WL 2555925 (1st Cir. 2006). The result is that the jury will be presented with Mr. Wilder's testimony regarding the blade brake theory of defect as the most likely cause of the accident and the Defendant will be left to attempt to explain the incident without reference to inadvertent activation. Plaintiff respectfully submits that the most practical solution would be to permit Mr. Wilder to testify regarding both theories of defect and to allow the jury evaluate the evidence.

## CONCLUSION

For all of the above reasons, the Plaintiff requests that this Court reconsider its decision to preclude Plaintiff's expert from testifying regarding the Interlock Theory. The Plaintiff further requests that this Court deny the Defendant's request for Summary Judgment.

Respectfully submitted
The Plaintiff
By his attorneys

/s/ Jonathan E. Tobin
Jonathan E. Tobin (641509)
Thomas Drechsler (134840)
FINNERAN BYRNE & DRECHSLER, LLP
50 Redfield St.
Boston, MA 02122
617-265-3900

## CERTIFICATE OF SERVICE

I, Jonathan E. Tobin, hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and that paper copied will be sent to those indicated as non-registered participants on October 6, 2006.

/s/ Jonathan E. Tobin
Jonathan E. Tobin