UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

MICHAEL WATSON, INDIVIDUALLY,
AND AS FATHER AND NEXT FRIEND
OF JOHN WATSON, PPA
     Plaintiff

v.                                                    CIVIL ACTION NO. 04-11782 DPW

HUSQVARNA PROFESSIONAL
OUTDOOR PRODUCTS INC.
     Defendant

**DEFENDANT'S RESPONSE TO PLAINTIFF'S
"SUPPLEMENTAL MOTION TO RECONSIDER"**

At a hearing on September 28, 2006, the Court extended a specific and limited

invitation to the plaintiff, relating to whether he can prove a causal connection between

the accident that occurred in this case and the sole remaining theory of design defect,

involving the lack of a blade brake on a power cutting tool.  In his "Supplemental Motion

to Reconsider," plaintiff has exceeded the scope of the Court's invitation, attempting first

to reargue whether his other theory of defect, involving placement of an interlock switch,

should be readmitted to the case.  He presents no new or persuasive arguments on this

point; the Court properly ruled the interlock theory inadmissible.

When plaintiff reaches the issue the Court asked him to address, he fares no

better.  As plaintiff's expert implicitly conceded in the testimony on which the Court

focused at the hearing, the absence of sufficient evidence to show that the blade of

plaintiff's saw was coasting—not under power—at the time of the accident makes it

impossible to draw a causal connection between the absence of a blade brake—which

functions only when the saw is coasting—and the accident that occurred.  It was for this

reason that the expert could offer, in the testimony on which the Court focused at the

hearing, only the limited opinion that "the presence of *both*" of the design modifications

he proposed—the blade brake *and* the re-designed interlock—would have prevented or

mitigated Watson's injury."[1]  With the Court having properly excluded the interlock

theory, the resulting causation gap is fatal to plaintiff's case, and defendant Electrolux[2] is

entitled to summary judgment.

I.      **The decisions plaintiff now cites do not give reason to question the
        Court's correct decision that Wilder's interlock theory was not the
        product of reliable methodology was therefore inadmissible**

Nothing in the decisions cited by the plaintiff should alter the result reached by

this Court in excluding Wilder's interlock theory on the grounds that it was not based on

sufficiently reliable methodology, either as to product defect or causation.  As noted by

Judge Saris in *United States v. Monteiro*, one of the cases on which plaintiff relies:

> In *Kumho Tire*, the Supreme Court was careful to emphasize that the trial
> judge must exercise her gatekeeping role with respect to all expert
> evidence, but that how she might exercise that role would necessarily vary
> depending on the type of testimony at issue.  *See Kumho Tire*, 526 U.S. at
> 150, 119 S.Ct. 1167; *United States v. Frazier*, 387 F.3d 1244, 1262 (11th
> Cir. 2004) ("Exactly how reliability is evaluated may vary from case to
> case, but what remains constant is the requirement that the trial judge
> evaluate the reliability of the testimony before allowing its admission at
> trial."); *Amorgianos v. Amtrak*, 303 F.3d 256, 266 (2d Cir. 2002)
> (recognizing that "the *Daubert* inquiry is fluid and will necessarily vary
> from case to case").[3]

The fact that the appellate courts in the decisions plaintiff cites held that the trial courts in

those cases did not abuse their discretion in admitting expert testimony, or that Judge

---

[1]  *See* Statement of Undisputed Facts filed in support of Electrolux's Motion for Summary
Judgment, ¶ 77 (emphasis supplied).

[2]  The Court has recently allowed an assented-to motion to amend the name of the defendant
corporation to Husqvarna Professional Outdoor Products, Inc.  Nonetheless, for the sake of simplicity and
consistency with earlier pleadings, the defendant will be referred to herein as Electrolux.

[3]  407 F. Supp. 2d 351, 357 (D. Mass. 2006)

Saris found that the testimony of a ballistics expert was admissible in *Monteiro*, has no

bearing upon this Court's decision to exclude Wilder's interlock opinion. Plaintiff's

persistent efforts to revive the interlock theory may best be viewed as an implicit

recognition of the point at issue here—that given the absence of causation evidence, he

would need both theories of defect to survive summary judgment.

> **II.   Contrary to plaintiff's assertion, Wilder's deposition testimony cannot fairly be read to offer the self-contradictory opinion that a blade brake alone would have prevented plaintiff's accident**

The Court's invitation at the September 28 hearing was not, as noted, that plaintiff

reargue whether the interlock theory should have been excluded, but rather that he direct

the Court to anything in the record that would permit a jury to find, contrary to the

testimony of plaintiff's expert Wilder, that the presence of a blade brake on the subject

saw, by itself, would have prevented plaintiff's accident. Plaintiff first suggests that

Wilder so testified at one point in his deposition.[4] But this does not represent a fair

reading of the expert's deposition testimony.

In the passage plaintiff cites, Wilder was asked a specific question: "When did

you first reach an opinion that power cutters without blade brakes are defectively

designed?" Referring to a time *before* he conceived of his interlock theory, Wilder

answered as follows:

> Well, shortly after I looked at the saw and realized what it was and how it
> was used, the thought -- I was very familiar with the use of blade brakes
> on other saws, and almost as soon as I realized what the circumstances of
> the accident were I came to a conclusion that it's very likely that a blade
> brake would have mitigated or eliminated the possibility of the accident.[5]

---

[4]  *See* Plaintiff's Supplemental Motion, pp. 4-5 (citing Wilder's Deposition at 105, 178-79).
[5]  *See* Wilder Deposition, Exhibit B to Plaintiff's Supplemental Motion, at 104-105.

Wilder's non-responsive testimony about his initial conclusion about the potential effect of a blade brake on plaintiff's accident must be read in the context of the unambiguous testimony Wilder gave later in the deposition—once both of his opinions had been explored—that because he could not determine whether the blade on plaintiff's saw was under power or coasting, *both* a blade brake and a redesigned interlock would have been necessary to prevent the accident.[6] Otherwise, Wilder's testimony would be internally inconsistent and would make no sense.

### III.    Plaintiff mischaracterizes the evidence about how the accident occurred in an effort to show that a blade brake would have prevented it

Plaintiff next seeks to avoid the blade-brake causation problem by re-describing the accident—in a way not supported by anything in the record.  Specifically, plaintiff suggests there is evidence that as Watson lowered the saw to his side just before he was injured, "he released the trigger as his hand slid to the back of the rear handle because the weight of the saw pulls the interlock and trigger away from the user's hand."[7]

As support for this characterization, plaintiff does not refer to any testimony of Watson, the only witness to the accident—and indeed, Watson never gave any such description.  Rather, plaintiff points the Court to a footnote in Electrolux's summary judgment memorandum.  In that footnote, defendant responded to a passing suggestion by Wilder in his deposition that "the weight of the saw" might "cause the *interlock button* to be depressed" (emphasis supplied) as the saw was lowered.  Electrolux pointed out that "when a user holds the power cutter in one hand by the rear handle [as Watson testified

---

[6] *See* Wilder Deposition, pp. 178-79.  Wilder has never sought to suggest that he did not mean what he said, in this later and more complete and responsive testimony, about both design changes being necessary—not by way of an errata sheet, not in an affidavit filed in response to Electrolux's motion for summary judgment (there was no such affidavit from Wilder), and not in the affidavit Wilder did submit as part of plaintiff's opposition to Electrolux's motion for reconsideration, and his supplemental motion.

[7] *See* Plaintiff's Supplemental Motion at 5.

he was doing when he was cut], the *button* is below the user's hand, and the weight of the power cutter if anything moves the *button* away from the hand, not toward it" (emphasis supplied).[8]

Defendant never suggested that the weight of the saw would likewise tend to pull the *trigger* away from the user's hand.  If anything, the opposite is true: the interlock and the trigger are depressed by exerting forces in different directions, the interlock in a forward direction toward the blade end of the saw and the trigger in an upward direction toward the top of the rear handle.[9]  Plaintiff's effort to imagine an accident scenario never described by Watson or posited by the defendant cannot be a basis for avoiding summary judgment.

**IV.     Plaintiff improperly seeks to introduce a new and nonsensical theory that a blade brake would have lessened Watson's injuries even if the blade was under power**

There is not merit to plaintiff's assertion—made for the first time here—that even if the blade was under power when it contacted Watson's leg, his injury would somehow have been mitigated because a blade brake "would have quickly stopped or slowed the blade within two seconds of when the trigger was released and the Blade Brake mechanism was activated."[10]  First, as pointed out above, there is no evidence that the trigger *was* released by Watson and thus would have activated a hypothetical blade brake. Second, any such "mitigation" theory would obviously require supporting expert testimony, and Wilder has never suggested it, or purported to have the necessary medical and other qualifications to offer an opinion about different degrees of tissue injury under

---

[8]  *See* Defendant's Memorandum in Support of Defendant's Motion to Preclude Expert Testimony and for Summary Judgment at 15, n.59.

[9]  *See,* Ex. G to Defendant's Motion to Preclude Expert Testimony for Summary Judgment; U.F., ¶¶ 11, 12.

[10]  *See* Plaintiff's Supplemental Motion at 5.

different accident circumstances.  And finally, the notion that Watson would have released the trigger but continued holding the spinning blade against his leg for long enough (at least two full seconds) to enable the blade brake to slow or stop the blade is nothing short of absurd on its face.

## V.    Judicial estoppel is not applicable in this case

A claim of judicial estoppel requires the proponent to "show that the party to be estopped succeeded previously with a position directly inconsistent with the one it currently espouses."[11]  Plaintiff has made no such showing here.

In arguing that it is entitled to summary judgment, Electrolux has consistently pointed out that (1) Watson, the only witness to the accident, concedes he does not know whether he was injured by a powered blade or a coasting blade; and (2) the expert Wilder likewise concedes that it is not possible to determine whether the blade was coasting or under power at the time of the accident.  With respect to Wilder's interlock theory, defendant argued (and the Court agreed) that there was no valid scientific basis to support the contention that the saw should have had a different interlock.  Among other things, the defendant argued that Wilder had failed to give any proper engineering consideration to the likelihood that unintentional one-handed two-switch activation of the saw could occur in real-world use of the tool, such that a different design should be considered.[12] The defendant also argued that there was no valid basis for concluding that a different interlock design would have overcome the "over-familiarity" problem hypothesized by Wilder, and would therefore have prevented the accident.[13]

---

[11]  *E.g., Beaudette v. Louisville Ladder, Inc.,* 462 F.3d 22, 26 (1st Cir. 2006).
[12]  *See* Defendant's Summary Judgment Memorandum at 13-15.
[13]  *See id.* at 15.

Plaintiff attempts to distort these arguments into a concession by Electrolux that (1) as a matter of engineering fact, unintentional activation can never occur, (2) therefore, Watson could not have inadvertently reactivated the saw after he completed his cut and released the trigger, and (3) his injury must thus have been caused by a coasting blade.[14] Electrolux has of course never conceded or argued any such thing, and the doctrine of judicial estoppel does not provide a basis for manufacturing such "concessions" as a substitute for what the plaintiff has the burden of introducing: real evidence that the absence of a blade brake on his saw, by itself, caused his accident and resulting injuries.

### Conclusion

For the reasons stated above and in Defendant's Motion for Partial Reconsideration of the Court's Order on Defendant's Motion for Summary Judgment, the Court should grant the Defendant's Motion for Summary Judgment in its entirety.

HUSQVARNA PROFESSIONAL
OUTDOOR PRODUCTS INC.,

By its Attorneys,

/s/  *David A. Barry*
David A. Barry, BBO No. 031520
Suleyken D. Walker, BBO No. 654933
Sugarman, Rogers, Barshak & Cohen, P.C.
101 Merrimac Street, 9th Floor
Boston, MA 02114-4737
(617) 227-3030
barry@srbc.com

DATED:   October 13, 2006

---

[14]  *See* Plaintiff's Supplemental Motion at 5-6 (Jury would not be permitted to consider possibility that Watson inadvertently activated the saw because "the Defendant has taken the position that there is absolutely no valid scientific basis upon which to suggest such an event occurred.").

8

CERTIFICATE OF SERVICE

I, David A. Barry, hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on October 13, 2006.

/s/ David A. Barry
David A. Barry
barry@srbc.com

Doc. #383265.2