# ATTACHMENT A

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MICHAEL WATSON, INDIVIDUALLY, AND AS FATHER AND NEXT FRIEND OF JOHN WATSON, PPA<br>    Plaintiff<br><br>v.<br><br>HUSQVARNA PROFESSIONAL OUTDOOR PRODUCTS INC.<br>    Defendant | CIVIL ACTION NO. 04-11782 DPW |

## DEFENDANT'S PROPOSED JURY INSTRUCTIONS

The Defendant proposes that the Court give the jury the following instructions:

### PRELIMINARY MATTERS

1.    <u>Introduction</u>  In this case, the plaintiff, Michael Watson, individually and as father and next friend of John Watson, his son, asserts that the defendant, Electrolux, is responsible for Watson's injuries in the accident of December 5, 2001.  Mr. Watson claims that Electrolux was negligent and breached an implied warranty in designing, manufacturing and selling the power cutter involved in the accident.  Mr. Watson also claims that Electrolux is responsible for John Watson's "loss of consortium" caused by the accident.  In other words, Mr. Watson has two claims, negligence and breach of implied warranty.

Electrolux denies that it was negligent, denies that it breached any warranty with respect to the power cutter, and further claims that Michael Watson was negligent in his use of the power cutter and that his negligence caused his accident.  Electrolux also contends that if Mr. Watson was injured by a defect in the power cutter (which Electrolux denies), Mr. Watson was fully aware of the alleged defect and danger, but, nevertheless,

unreasonably proceeded to use the power cutter notwithstanding this awareness. You

will apply the law with respect to each of the claims asserted by Mr. Watson, on which I

will instruct you in a moment, to the facts of this case as you find them.

2.    <u>Occurrence of Accident</u>  You should keep in mind that the occurrence of

the accident and the fact that Mr. Watson was injured are not by themselves any basis for

holding Electrolux liable to Mr. Watson in this case.[1]

3.    <u>Burden of Proof</u>  On each issue submitted to you in this case, one party or

the other has the burden of proof to establish that party's claim or defense by a

"preponderance of the evidence." To establish something by a preponderance of the

evidence means to prove that it is more likely true than not. This burden of proof has <u>not</u>

been carried as to a particular issue if, after you have considered all the evidence, you

find that you must speculate, guess or imagine whether one or more necessary facts is

true.

---

[1]    <u>Ricciutti v. Sylvania Electric Products, Inc.</u>, 343 Mass. 347 (1961); <u>Abrahams v. Rice</u>, 306 Mass. 24, 24-25 (1940).

## DEFECTIVE DESIGN

1.    <u>Defective Design</u>  Both Mr. Watson's negligence claim and his claim of breach of warranty are based on his central contention that the Electrolux power cutter was "defectively designed" and unreasonably dangerous at the time it was manufactured and sold by Electrolux.  Mr. Watson contends that the power cutter was defectively designed because of the absence of a blade brake.  Mr. Watson does not contend that any <u>other</u> aspect of the power cutter was defective in any way.

2.    <u>Defective Design</u>  The law requires that the manufacturer of a product anticipate the environment in which its product will be used, and design against the reasonably foreseeable risks associated with the product's use in that setting.[2]  A manufacturer is not required to make a perfect product, or the safest possible product. Instead, the manufacturer's obligation is to make a product which, as designed, is reasonably safe.[3]

3.    <u>Defective Design</u>  If you find that the power cutter was designed against the reasonably foreseeable risks that accompanied its ordinary and intended use, then the power cutter was not defectively designed.  If you find that an accident such as the one that occurred in this case was not among the reasonably foreseeable risks accompanying the ordinary use of the power cutter, then the power cutter was not defectively designed.[4]

4.    <u>Defective Design</u>  In determining whether the power cutter was

---

[2]   <u>Back v. Wickes Corp.</u>, 375 Mass. 633, 640-41 (1978).

[3]   <u>Back</u>, 375 Mass. at 642; <u>Tibbetts v. Ford Motor Co.</u>, 4 Mass. App. Ct. 738, 740 (1976), <u>rev. denied</u>, 371 Mass. 901 (1977); <u>Mitchell v. Ford Motor Co.</u>, 533 F.2d 19, 20 (1st Cir. 1976).

[4]   <u>Back</u>, 375 Mass. at 642; M.G.L. c. 106, § 2-314(1), (2).

defectively designed, you should consider the nature of the power cutter as a whole, including all of its intended uses and users and all safety features, warnings and instructions with which it was equipped, and then determine whether or not the design of the entire power cutter rendered it unreasonably dangerous.[5] You should consider the fact that such equipment is designed to perform safely and effectively under a variety of circumstances and uses, and thus, for example, a particular design option that might make the power cutter safer or more effective in one situation might make it more dangerous or less useful in others.[6]

    5.    <u>Defective Design</u>  In determining whether the power cutter was defectively designed, you should consider whether the power cutter was more dangerous than a user such as Mr. Watson would have expected, in light of what common knowledge there may have been among such users concerning the power cutter and its characteristics, and in light of the normal expected risks connected with the operation of such a power cutter.[7] You should evaluate the risk of an accident such as the one that occurred in this case, and the likelihood of harm, the likely severity of such harm and the physical forces involved.[8]

---

[5]  <u>Bernier v. Boston Edison Co.</u>, 380 Mass. 372, 378-79 (1980); <u>Daly v. General Motors Corp.</u>, 575 P.2d 1162, 1174 (Cal. 1978); <u>Dreisenstock v. Volkswagenwerk, A.G.</u>, 489 F.2d 1066, 1073-76 (4th Cir. 1974).

[6]  <u>Bernier</u>, 380 Mass. at 378-79; <u>Daly</u>, 575 P.2d at 1175; <u>Melia v. Ford Motor Co.</u>, 534 F.2d 795, 800 (8th Cir. 1976); <u>Wilson v. Volkswagen of America, Inc.</u>, 445 F. Supp. 1368, 1371 (E.D. Va. 1978); <u>McElroy v. Allstate Insurance Co.</u>, 420 So.2d 214 (La. App. 1982).

[7]  <u>Back</u>, 375 Mass. at 642; <u>Jeng v. Witters</u>, 452 F. Supp. 1349, 1355 (M.D. Pa. 1978).

[8]  <u>Bernier</u>, 380 Mass. at 378; <u>Jeng</u>, 452 F. Supp. at 1355; <u>Dreisenstock</u>, 489 F.2d at 1074-75; <u>Huddell v. Levin</u>, 537 F.2d 726 (3d Cir. 1976).

6.    <u>Alternative Design</u>  Mr. Watson bears the burden of proving by a preponderance of the evidence that the power cutter was defectively designed and unreasonably dangerous.  In order to establish this, Mr. Watson is required to show that, at the time the power cutter was manufactured, an alternative safer design for the power cutter was available that would have prevented the accident that occurred.[9]  Mr. Watson is required to show that this alternative design was mechanically and economically feasible for Electrolux at the time the saw was manufactured.[10]

7.    <u>Alternative Design</u>  In considering whether Mr. Watson has established that there was a safer, feasible alternative design for the power cutter, you should consider the gravity of the danger posed by the challenged design, the likelihood that the type of accident in question would occur, the mechanical feasibility of the proposed alternative design, the financial cost of altering the design, and any adverse consequences to the power cutter and to buyers of the power cutter that would result from the proposed alternative design.[11]

8.    <u>Similarity of Design</u>  You may consider whether other manufacturers, at the time the subject power cutter was sold, utilized the same or a similar design, or the alternative design suggested by the plaintiff, on the power cutters they sold.  The key time period to consider is 2000-2001, when the subject power cutter was sold.

---

[9]  <u>Back</u>, 375 Mass. at 642; <u>Fahey v. Rockwell Graphic Systems, Inc.</u>, 20 Mass. App. Ct. 642, 658 (1985).

[10]  <u>Back</u>, 375 Mass. at 642; <u>Fahey</u>, 20 Mass. App. Ct. at 658.

[11]  <u>Back</u>, 375 Mass. at 642.

## CAUSES OF ACTION

1.    <u>Breach of Warranty</u>  As I indicated, one of Mr. Watson's two claims is that Electrolux breached an "implied warranty of merchantability" in manufacturing and selling the power cutter as designed.  The law does not make the manufacturer or seller of a product an insurer who is liable for every accident involving the product.[12]  Rather, the "implied warranty of merchantability" is a warranty given by the manufacturer and seller of a product that the product is reasonably suitable for the ordinary, foreseeable uses for which products of its kind are sold.[13]  Thus, in order to establish his claim of breach of warranty, Mr. Watson must demonstrate by a preponderance of the evidence that the power cutter as designed was not reasonably suitable for its ordinary, foreseeable uses.

2.    <u>Negligence</u>  The other of Mr. Watson's claims is that that Electrolux was negligent in designing, manufacturing and selling the power cutter as designed.  In order to establish this claim, Mr. Watson must prove by a preponderance of the evidence that Electrolux breached a legal duty it owed to him.  Electrolux's legal duty to Mr. Watson was to use reasonable care in designing the saw.  This is a duty of reasonable conduct, not perfection.  Electrolux was not required to make or sell a perfect product, or the safest possible product.  Rather, its duty was to make and sell a product which, as designed, was reasonably safe.[14]  A manufacturer or seller does not breach this duty simply because a product may cause injury if used in an improper and unforeseeable manner.[15]  Electrolux

---

[12] <u>Back</u>, 375 Mass. at 640-41 (1978); <u>Bernier</u>, 380 Mass. 372.

[13] <u>Vincent Nicholas v. Tsinkas Co.</u>, 337 Mass. 726 (1958); M.G.L. c. 106, § 2-314.

[14] <u>Back</u>, 375 Mass. at 642; <u>Tibbetts</u>, 4 Mass. App. Ct. at 740; <u>Mitchell</u>, 533 F.2d at 20.

[15] <u>Tibbetts</u>, 4 Mass. App. Ct. at 741-42.

is held to the standard of care which the ordinary, reasonably prudent manufacturer or seller would have exercised under the circumstances.[16]

---

[16] <u>Back,</u> 375 Mass. at 643.

CAUSATION

1.     Causation  In addition to proving that Electrolux was negligent or
breached the implied warranty of merchantability, Mr. Watson must persuade you by a
preponderance of the evidence that the alleged defective design of the power cutter was a
substantial contributing factor in causing the accident, and his resulting injuries.  The
causal connection between the alleged defect in the power cutter and the accident cannot
be left to your surmise or conjecture.  It would not be enough, for example, for Mr.
Watson to show that the accident might reasonably or conceivably have been caused by
the alleged defect in the power cutter.[17]

---

[17]     Higgins v. Delta Elevator Service Corp., 45 Mass. App. Ct. 643 (1998).  M.G.L.
c.106, § 2-314, comments ¶ 13; Smith v. Ariens Co., 375 Mass. 620 (1978); Kenney v.
Sears, Roebuck & Co., 355 Mass. 604 (1969); Josi's Case, 324 Mass. 415 (1949);
Green's Case, 266 Mass. 355 (1929).

<u>EXPERTS</u>

1.    <u>Experts</u>  In order to establish both that the power cutter in this case was defectively designed and unreasonably dangerous, and that the alleged defect in the power cutter caused his accident, Mr. Watson is required to offer credible testimony of an expert witness.  You heard the testimony of Mr. Wilder on behalf of the plaintiff, and also the testimony of Mr. Gustafsson and Mr. Funk on behalf of Electrolux.

2.    <u>Experts</u>  While an expert witness is permitted to testify in the form of an opinion as to matters relating to a case, it is for you to decide what weight to give a particular expert's opinions in making your decision.  It is the burden of the party offering an expert to demonstrate the reliability of his expert's opinion.  You must determine whether the reasoning or methodology underlying the testimony is scientifically valid and applicable to the facts at issue.  You should not rely on the opinions of any expert witness which are not adequately based on facts, as opposed to speculations or assumptions about facts.[18]

3.    <u>Experts</u>  In evaluating the weight you will give to an expert's testimony, you may consider the degree to which the expert is qualified in the field in which he is testifying, and give less credence to a less-qualified expert witness.[19]  You may consider whether the expert spends all or a substantial amount of his time consulting with attorneys and/or testifying in court rather than practicing in his or her field or engaging in work that will advance the level of knowledge in that field.  You may also consider whether the expert has demonstrated a bias for or against a particular group such as

---

[18]  <u>Swartz v. General Motors Corp.</u>, 375 Mass. 628, 633 (1979); <u>Wiska v. St. Stanislaus Social Inc.</u>, 7 Mass. App. Ct. 813, 818-21 (1979).

[19]  <u>Holmgren v. Massey-Ferguson, Inc.</u>, 516 F.2d 856 (8th Cir. 1975).

plaintiffs or defendants in the litigation in which he has been involved.[20]

    4.    <u>Experts</u>  You may also consider the degree to which an expert does or does not have specialized experience and knowledge in the field about which he is testifying. You may choose to give more weight to the testimony of a specialist than an expert with more generalized experience and knowledge.[21] You may consider whether the expert has purported to be an expert in other fields not substantially related to the field in which he now claims to be an expert.[22] You may consider the degree to which an expert is familiar with common definitions and standards in the field in which he is serving as an expert.[23]

    5.    <u>Experts</u>  In weighing the testimony of the experts in this case, you may consider whether the expert has specialized experience or training with respect to the subject matter of the testimony and give more weight to the testimony of a witness with greater experience and/or training in the relevant subject matter.[24]

---

[20]  <u>See</u> <u>Tokio Marine & Fire Ins. Co. v. Grove Mfg. Co.</u>, 762 F. Supp. 1016, 1018 (D.P.R. 1991), <u>aff'd</u>, 958 F.2d 1169 (1st Cir. 1992); <u>In Re Air Crash Disaster at New Orleans, La.</u>, 795 F.2d 1230, 1234 (5th Cir. 1986); <u>Gideon v. Johns-Manville Sales Corp.</u>, 761 F.2d 1129, 1135-36 (5th Cir. 1985); <u>Manufacturing Research Corp. v. Graybar Elec. Co.</u>, 679 F.2d 1355 (11th Cir. 1982).

[21]  <u>Payton v. Abbott Labs</u>, 780 F.2d 147, 155 (1st Cir. 1985); <u>Christophersen v. Allied-Signal Corp.</u>, 939 F.2d 1106, 1112-13 (5th Cir. 1991), <u>cert. denied</u>, 112 S.Ct. 1280 (1992); <u>In re Agent Orange Products Liability Litigation</u>, 611 F.Supp. 1223 (E.D.N.Y. 1985); <u>aff'd</u>, 818 F.2d 187 (2d Cir.), <u>cert. denied sub nom.</u> <u>Lombardi v. Dow Chemical Co.</u>, 487 U.S. 1234 (1987); <u>Davis v. Fox River Tractor Co.</u>, 518 F.2d 481 (10th Cir. 1975).

[22]  <u>Tokio Marine</u>, 958 F.2d at 1174-75.

[23]  <u>See, e.g.</u>, <u>Davis v. Combustion Engineering, Inc.</u>, 742 F.2d 916 (6th Cir. 1984); <u>Ellis v. K-Lan Co.</u>, 695 F.2d 157, 160-61 (5th Cir. 1983).

[24]  <u>Garrett v. Desa Industries, Inc.</u>, 705 F.2d 721 (4th Cir. 1983).

6.    <u>Experts</u>  In weighing the testimony of an expert advocating an alternative design for a product, you may consider whether the expert has actually undertaken such a design, or whether he has relied on an abstract theory in arriving at his conclusions.[25] You may consider whether the expert's theory or technique can be and has been tested. You may choose to give less weight to a theory or technique that cannot be empirically tested, or that may be but has not been empirically tested.[26]

---

[25]    <u>Data Line Corp. v. Micro Technologies, Inc.,</u> 813 F.2d 1196 (Fed.Cir. 1987); <u>Wells v. Ortho Pharmaceutical Corp.,</u> 788 F.2d 741, 744 (11th Cir.), <u>cert. denied,</u> 479 U.S. 950 (1986); <u>Ferebee v. Chevron Chemical Co.,</u> 731 F.2d 1529, 1535 (D.C.Cir.), <u>cert. denied,</u> 469 U.S. 1062 (1984).

[26]    <u>See</u> <u>Daubert v. Merrell Dow Pharmaceuticals, Inc.,</u> 113 S.Ct. 2786, 2797 (1993).

## DEFENSES

1.    <u>Contributory Negligence</u>  Electrolux contends that Mr. Watson's own

negligence was a substantial contributing factor in causing the accident.  On this issue,

Electrolux has the burden of persuading you, by a preponderance of the evidence, that

Mr. Watson was negligent in failing to take reasonable precautions for his own safety,

and that his negligence substantially contributed to the accident.  If you reach this issue,

and Electrolux has met its burden of proof, you will be asked to compare, as percentages

of one hundred, the extent to which the negligence of Electrolux and Mr. Watson were

involved in causing the accident.

2.    <u>Unreasonable Use</u>  Even if a product is shown to be defective, a plaintiff

may not recover on a claim of breach of warranty if, at the time of the accident, he knew

of the alleged defect and the danger created by it, and nonetheless unreasonably

proceeded to use the product.[27]  If you reach this issue, Electrolux would have the burden

of persuading you by a preponderance of the evidence that Mr. Watson knew of the

alleged defect and danger presented by the design of his power cutter—that is, at the time

of the accident he knew the blade did not have a brake and knew that the blade coasts to a

stop after the power is switched off—and with this knowledge acted unreasonably in

failing to avoid injury.[28]

3.    <u>Breach of Warranty – Reasonableness of Delay in Notice</u>  The plaintiff in

a breach of warranty claim is under a duty to provide a potential defendant with

---

[27]  <u>Correia v. Firestone Tire & Rubber Co.</u>, 388 Mass. 342, 355 (1983); <u>Allen v. Chance Mfg. Co.</u>, 398 Mass. 32, 34 (1986); <u>Goulet v. Whitin Machine Works, Inc.</u>, 30 Mass. App. Ct. 310, 314 (1991); <u>Velleca v. Uniroyal Tire Co.</u>, 36 Mass. App. Ct. 247, 249-50 (1994).

[28]  <u>Cigna Ins. Co. v. Oy Saunatec Ltd.</u>, 241 F.3d 1, 18-19 (1st Cir. 2001).

reasonably prompt notice of his claim.  The question of whether the notice was unreasonably late depends upon the reasonableness of the plaintiff's behavior under the circumstances of this case.[29]

      4.      <u>Breach of Warranty – Prejudice from Late Notice</u>  If you determine that the notice of the breach of warranty provided by Mr. Watson to Electrolux was unreasonably late, you must determine whether Electrolux was prejudiced by the late notice.  In order to show prejudice, Electrolux is not required to show that the lost evidence definitively would have helped its defense; rather, it must merely show that the delay may have deprived it of useful evidence.[30]

---

[29]  <u>Smith v. Robertshaw Controls Co.</u>, 410 F.3d 29, 36 (1st Cir. 2005).

[30]  <u>Id</u>. at 36-37.

## DAMAGES

1.    <u>Damages</u>  If you reach the issue of damages, Mr. Watson would have the burden of proving by a preponderance of the evidence that he suffered damages in the amounts for which he seeks to recover, and that the damages were proximately caused by the accident.  It would not be enough that a person in Mr. Watson's position might reasonably or conceivably incur damages of the kind alleged as a result of such an accident.  Mr. Watson must show that he did, in fact, incur each of the damages amounts he claims, and that the damages resulted from the accident, as opposed to some other cause or causes.

2.    <u>Loss of Consortium</u>  John Watson's claim in this case is for "loss of consortium," or harm to his enjoyment of his father/son relationship with Mr. Watson.  If the Watsons have persuaded you that Electrolux was negligent or breached a warranty with respect to the design of the power cutter, and that Electrolux's negligence and/or breach of warranty was a substantial contributing factor in causing the accident, then John Watson would have the burden of proving, again by a preponderance of the evidence, that as a result of the accident he has suffered a loss of his father's companionship, society, or moral support.

3.    <u>Damages</u>  If you reach the issue of damages, any damages you award must be reasonable.  You may not be guided by sympathy for or against any party involved in this case in awarding damages, nor may you speculate as to the amount of damages to which Mr. Watson may be entitled.  In calculating any damages in this case, you should keep in mind that any damages awarded to Mr. Watson would not be subject to federal or

state income tax.[31]

ELECTROLUX PROFESSIONAL OUTDOOR
PRODUCTS, INC., n/k/a HUSQVARNA
PROFESSIONAL OUTDOOR PRODUCTS INC.,

By its Attorneys,

/s/ Andrew R. Levin
David A. Barry, BBO No. 031520
Andrew R. Levin, BBO No. 631338
Sugarman, Rogers, Barshak & Cohen, P.C.
101 Merrimac Street, 9th Floor
Boston, MA 02114-4737
(617) 227-3030
levin@srbc.com

DATED:   February 21, 2007

CERTIFICATE OF SERVICE

I, Andrew R. Levin, hereby certify that this document, filed through the ECF
system, will be sent electronically to the registered participants as identified on the Notice
of Electronic Filing (NEF) and paper copies will be sent to those indicated as non
registered participants on February 21, 2007.

/s/ Andrew R. Levin
levin@srbc.com

Doc. #387879

---

[31]  Griffin v. General Motors Corp., 380 Mass. 362 (1980).

15