UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

MICHAEL WATSON, INDIVIDUALLY,
AND AS FATHER AND NEXT FRIEND
OF JOHN WATSON, PPA
    Plaintiff

v.

HUSQVARNA PROFESSIONAL
OUTDOOR PRODUCTS INC.
    Defendant

CIVIL ACTION NO. 04-11782 DPW

### DEFENDANT'S MOTION *IN LIMINE* TO PRECLUDE PLAINTIFF'S EXPERT FROM OFFERING TESTIMONY AS TO THE CONDITION OF THE BLADE AT THE TIME OF PLAINTIFF'S INJURY, AND TO PRECLUDE PLAINTIFF'S EXPERT FROM TESTIFYING THAT THE POWER CUTTER'S BLADE, AFTER COASTING FOR NINE SECONDS, HAD SUFFICIENT ENERGY TO CAUSE PLAINTIFF'S INJURY

Electrolux Professional Outdoor Products, Inc., n/k/a Husqvarna Professional Outdoor Products Inc. ("Electrolux") moves *in limine* to preclude Plaintiff's expert, Leslie N. Wilder ("Wilder"), from offering testimony regarding the state of the blade (*i.e.,* whether it was powered or coasting for any specific amount of time) at the time Michael Watson suffered his injury and from offering testimony that that the power cutter's blade, after coasting for nine seconds, had sufficient power to cause Watson's injury.

As grounds for this motion, discussed more fully below, Electrolux states that Wilder lacks the relevant expertise to render an opinion as to the speed and power of the power cutter's blade at the time Watson suffered his injury or the ability of a blade that had been coasting for nine seconds to cause Watson's injury. In addition, even if Wilder had the relevant expertise, any such testimony should be excluded as unreliable because (1) Wilder himself has previously conceded that he is unable to draw a conclusion as to the blade's condition at the time of

Watson's injury and (2) Wilder has failed to perform any reliable research, tests, or studies concerning the energy that a coasting blade has at a particular point in time and how long after it begins to coast that this type of blade can still cause the injuries presented in this case.

## ARGUMENT

I.  **Wilder lacks the relevant expertise to testify regarding a link between Watson's injury and the condition of the blade at the time the injury occurred.**

A witness is qualified to provide expert testimony only if he has the "knowledge, skill, experience, training, or education" in the relevant field of expertise, such that his proffered opinions are likely to be of assistance to the jury.[1] The witness's qualifications must "relate to the subject matter of the proposed testimony."[2]

Wilder lacks the requisite expertise to offer an opinion as to (1) the power necessary in the power cutter's blade to inflict the injury suffered by Mr. Watson or (2) whether a blade that had been coasting for nine seconds would have had sufficient energy to cause Watson's injury because his field of expertise, mechanical engineering, is not relevant to the question of the speed and power of the blade necessary to cause Watson's injury. While the question of whether the lack of a blade brake constitutes a design defect is a question of mechanical engineering, about which this Court has deemed Wilder qualified to testify, the question of whether the precise nature of Watson's injury can be linked to a particular state of the blade at the time it

---

[1] See Fed. R. Evid. 702; Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 153 (1999); Daubert v. Merrell Pharmaceuticals, Inc., 509 U.S. 579, 589-592 (1993).

[2] Berry v. Crown Equipment Corp., 108 F. Supp. 2d 743, 749 (E.D. Mich. 2000); and see Polaino v. Bayer Corp., 122 F. Supp. 2d 63, 68-69 (D. Mass. 2000) (excluding chemist's opinion that film processor was defective where he had no knowledge relative to design of machinery at issue).

came into contact with Watson's leg is a question of biomechanical and medical testimony, which are outside Wilder's field of expertise.[3]

## II. Wilder has no reliable basis for concluding that the blade was under any specific condition at the time Watson suffered his injury.

Even if Wilder were theoretically qualified to render an opinion as to the speed and power of the blade necessary to cause Watson's injury, he has no reasonable basis for doing so in this case given his complete lack of relevant testing to determine (1) how fast the power cutter's blade would have been going at various points in time during "coastdown" and (2) the speed and power that the power cutter's blade would have to have been spinning to cause the injuries suffered by Watson.

As is by now well recognized, Rule 702 of the Federal Rules of Evidence "imposes a special obligation upon a trial judge to ensure that any and all [expert] testimony is not only relevant, but reliable."[4] Where the "factual basis, data, principles, methods or... application" of methods underlying an expert's proposed testimony "are called sufficiently into question,... the trial judge must determine whether the testimony has a reliable basis in the knowledge and experience of the relevant discipline."[5] The objective of *Daubert*'s gatekeeping requirement "is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the

---

[3] See Memorandum and Order dated August 4, 2006, at pp. 6-8.

[4] Kumho Tire, 526 U.S. at 147 (quoting Daubert).

[5] Id. at 149.

practice of an expert in the relevant field."[6] The issue "is not only how objectively reliable the evidence is, but also the legitimacy of the process by which it is generated."[7]

In the absence of any of the process or methodology normally underlying an opinion that is truly grounded in engineering science, an expert's opinion amounts to "sheer *ipse dixit*."[8] Courts are appropriately wary of "expert testimony that offers only a bare conclusion" or "nothing but a bottom line," given the danger of "argument... masquerading as expert opinion."[9] Likewise, opinions formed solely in the context of litigation should be subjected to extra scrutiny.[10] Whether a theory "can be (and has been) tested" is a "key" factor in assessing whether the theory is reliable as expert scientific testimony.[11] It is "generating hypotheses and testing them to see if they can be falsified... [that] distinguishes science from other fields of human inquiry."[12]

Here, Wilder concedes that he is unable to conclude that it is more likely than not that the blade was coasting (as opposed to being under full power) at the time of the injury:

> Q:   Do you assign any greater probability to the blade being coasting, on the one hand, or under power on the other at the time he was injured?
>
> A:   I simply don't have enough information to make that determination.

---

[6] Id. at 152.

[7] U.S. v. Hines, 55 F. Supp. 2d 62, 65 (D. Mass. 1999).

[8] See Cipollone v. Yale Indust. Prod., Inc., 202 F.3d 376, 380 (1st Cir. 2000).

[9] SMS Systems Maintenance Services, Inc. v. Digital Equipment Corp., 188 F.3d 11, 25 (1st Cir. 1999); Sultis v. General Motors Corp., 690 F. Supp. 100, 103-104 (D. Mass. 1988); Mid-State Fertilizer Co. v. Exchange Nat'l Bank, 877 F.2d 1333, 1339 (7th Cir. 1989).

[10] Daubert v. Merrell Dow Pharmaceuticals, Inc., 43 F.3d 1311, 1317 (9th Cir.).

[11] Daubert, 509 U.S. at 592 n.9.

[12] Id. (citations omitted).

Q: So, you simply don't know?

A: I simply don't know.

. . .

Q: And you can't say to a reasonable degree of engineering certainty whether the blade was coasting or under power at the time of his injury, correct?

A: No, I cannot say that.[13]

Moreover, Wilder concedes that he had not performed any tests to determine how fast the power cutter's blade needed to be going, and whether the blade needed to be under full power, to produce Watson's injury, nor did he perform any tests to determine how fast a blade that had been coasting for a particular period of time would be traveling.[14] Rather, Wilder describes his limited "tests" concerning the ability of a coasting blade to inflict the injury suffered by Watson as follows:

> I just jammed the saw into the wood as—into *a piece of wood* as it was coasting to a stop a few times, just to see what would result, and it wasn't—*it wasn't documented to the extent that I listed what the coast times were*, because it was not completely comparable to the accident. I just wanted to see what the effect of this abrasive blade in a coastdown mode would have had on a piece of wood.[15]

---

[13] Deposition of Leslie N. Wilder ("Wilder Depo."), at pp. 41, 80. (All cited portions of the Wilder Depo. are attached hereto as Ex. A.

[14] Id. at p. 70; see also id. at p. 75. Certainly, Wilder could have easily performed relevant testing—Electrolux's expert Dr. James D. Funk, conducted tests wherein he allowed the blade to coast for variable times and then struck the saw against pig legs with variable forces to determine the resulting injury.

[15] Id. at p. 62 (emphasis supplied).

Given his deposition testimony, and absent any relevant testing, any testimony that Wilder would offer as to the condition of the blade (*i.e.*, its speed and whether it was powered or coasting) at the time it caused Watson's injury would have no reliable basis and should be precluded.[16]

### III. For similar reasons, Wilder should be precluded from testifying that the power cutter's blade, after coasting for nine seconds, would have had sufficient energy to cause Watson's injury.

Watson's only remaining theory of liability is that the lack of a blade brake on the power cutter caused his injuries. In asserting this theory, Watson relies on his account that he shut off the power cutter while on top of the ladder, checked on the cut he had just made, proceeded down the ladder several rungs, and then engaged in a series of maneuvers, changing the saw between his two hands and then dropping the saw to his side.[17] It is after this series of events that Watson says he cut himself with the coasting blade. According to Wilder's own reconstruction of the accident, this series of events would have taken Watson at least nine seconds to complete.[18] Because, as discussed above, (1) Wilder lacks the relevant expertise to opine as to how fast the blade would have been spinning after nine seconds, and whether a coasting blade traveling at that speed could have caused Watson's injuries, and (2) Wilder has failed to perform any relevant testing, Wilder should be precluded from offering an opinion as to

---

[16] Cipillone, 202 F.3d at 380.

[17] See Memorandum and Order dated August 4, 2006, p. 4.

[18] Wilder Depo. at pp. 58-59.

whether the power cutter's blade, after coasting for nine seconds, would have had sufficient energy to cause Watson's injury.[19]

## CONCLUSION

WHEREFORE, Electrolux respectfully requests that this Court (1) preclude Watson's expert Leslie Wilder from offering testimony as to the state of the power cutter's blade at the time Watson suffered his injury and (2) preclude Watson's expert Leslie Wilder from offering testimony that the power cutter's blade, after coasting for nine seconds, had sufficient energy to cause Watson's injury.

ELECTROLUX PROFESSIONAL OUTDOOR
PRODUCTS, INC., n/k/a HUSQVARNA
PROFESSIONAL OUTDOOR PRODUCTS INC.,
By its Attorneys,

/s/ Andrew R. Levin
David A. Barry, BBO No. 031520
Andrew R. Levin, BBO No. 631338
Sugarman, Rogers, Barshak & Cohen, P.C.
101 Merrimac Street, 9th Floor
Boston, MA 02114-4737
(617) 227-3030
levin@srbc.com

DATED: February 21, 2007

---

[19] Wilder acknowledges that while coasting, the power cutter loses its energy geometrically as opposed to arithmetically. In other words, if the coastdown time for the power cutter is twelve seconds, well more than half of the energy has been lost after six seconds. Wilder Depo. at p. 74. Thus, without conducting the appropriate tests, Wilder cannot reasonably be expected to know at what point in time the coasting blade loses its ability to cause an injury such as the one suffered by Watson.

CERTIFICATE OF SERVICE

I, Andrew R. Levin, hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non- registered participants on February 21, 2007, 2006.

/s/ Andrew R Levin
levin@srbc.com

Doc. 387975 v.1