UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

MICHAEL WATSON, INDIVIDUALLY,
AND AS FATHER AND NEXT FRIEND OF
JOHN WATSON
        Plaintiff

V.                                        Civil Action No. 04-11782-DPW

HUSQVARNA PROFESSIONAL
OUTDOOR PRODUCTS, INC.,
        Defendant

**PLAINTIFF'S PRETRIAL MEMORANDUM PURSUANT TO LR 16.5**

I.    **Trial Counsel Contact Information**

    Thomas Drechsler
    BYRNE & DRECHSLER LLP
    50 Redfield St.
    Boston, MA 02122
    617-265-3900
    Tdrechsler@FBDLegal.com

    Jonathan E. Tobin
    BYRNE & DRECHSLER LLP
    50 Redfield St.
    Boston, MA 02122
    617-265-3900
    JETobin@FBDLegal.com

II.    **Whether the case is to be tried with or without a jury**

    This is a products liability case in which all parties have requested their right to a jury trial.

III.    **Concise Summary of the Evidence**

    The evidence will show that on December 5, 2001, Michael Watson, then age 30, was working as a laborer for Modern Continental Construction Company on the I-93 Third Harbor

Tunnel project. On that day, Mr. Watson was working in a tunnel below the travel lanes cutting rebar that protruded from the tunnel walls. The environment in which Mr. Watson was working was noisy and lighted by portable lighting units. To protect himself, Mr. Watson was wearing a hard hat, ear plugs, eye protection and work gloves.

In order to cut the rebar, Mr. Watson was using a model K2300EL electric saw manufactured by Partner, a division of the Defendant, Husqvarna. The K2300EL saw consists of an electric motor mounted in a housing. The motor drives a set of gears that, in turn, causes a blade mounted on front of the saw to spin rapidly. There is a front handle and a rear handle on the saw. It is equipped with a blade guard and an interlock mechanism. The only power saws in the area where Mr. Watson was injured were Partner electric saws.

For the several weeks prior to his accident, Mr. Watson had been frequently using the subject saw to repeatedly cut rebar in the tunnel. During the week prior to his accident, Mr. Watson was the "saw guy" whose exclusive job was to repeatedly cut rebar from the wall using the subject saw. Prior to the day of the accident, Mr. Watson had no difficulty with any of the mechanisms, or operation, of the subject saw and, on the day of the accident, the saw was fully operational. At no time did Mr. Watson alter the subject saw. The locations of the rebar protruding from the wall varied from close to the floor, to as high as the 20 foot ceiling

At the time of his accident, Mr. Watson was cutting a piece of rebar located approximately 10 feet above the floor of the tunnel. Mr. Watson climbed a ladder and cut the rebar relatively quickly and efficiently, but unfortunately, on this occasion, he suffered severe injuries when he reached the base of the ladder. In order to make the cut, Mr. Watson climbed up to the fifth or sixth rung of a ladder. From there, he grasped the saw by holding the rear handle with his right hand and the front handle with his left hand. He activated the saw and cut the rebar. After finishing the cut, he took his right hand off of the rear handle and deactivated the saw as he released the trigger. Mr. Watson then readjusted his left hand on the front handle of the saw and reached over with his right hand to make sure the cut rebar was flush with the wall

After determining that the rebar had been cut flush with the wall, Mr. Watson descended to the ground. When he got to the bottom of the ladder, Mr. Watson took his right hand and gripped the saw by the front handle then removed his left hand from the front handle and gripped the saw by the rear handle with his left hand. After lowering the saw to his side, and while still gripping the rear handle of the saw with only his left hand, Mr. Watson felt the blade come into contact with his leg.

Mr. Watson suffered deep lacerations to the peroneal nerves in his left leg as a result of the accident. Surgery was performed at Boston Medical Center following the accident in an attempt to repair the peroneal nerve. However, Michael Watson has permanently lost feeling in, and control of, his left foot, resulting in a foot drop, which causes him the have difficulty with his balance and requires him to walk with an altered gait.

Plaintiff's Expert Mechanical engineer, Leslie Wilder, P.E., investigated the accident. As a result of his investigation, Mr. Wilder will testify, to a reasonable degree of engineering certainty, that Mr. Watson's injury could have been prevented or mitigated by the incorporation of a blade brake mechanism into the design of the K2300EL saw. The presence of the deep laceration in Mr. Watson's left leg indicates that the blade was coasting with significant force at the time it came in contact with his leg. The reason that the blade was coasting when it contacted Mr. Watson's leg was that the saw did not have a blade brake to quickly reduce the coasting of the blade after deactivation. Blade-braking mechanisms on electric saws with rotating blades are commonly used and the technology to employ such a mechanism on the subject saw has been readily available since the 1960's. Based on testing, an abrasive blade on the subject saw measuring 12" or 14" could have been made to stop in approximately two seconds if a blade braking mechanism had been incorporated into the design of the K2300EL. Without a blade brake, the blade will continue to spin for a prolonged period following deactivation. The duration of time that the blade continues to spin depends on the condition of the saw.

Plaintiff's Expert Vocational Rehabilitationist, Amy E. Vircillo, C.R.C, C.D.M.S., reviewed the documents and medical records generated in this litigation and conducted an interview of Mr. Watson. Ms. Vercillo will testify, to a reasonable degree of vocational certainty, that Mr. Watson sustained permanent functional impairment that prevents him from returning to work in the field of construction. Ms. Vercillo will further testify that Mr. Watson's lost income as a result of only being able to work in sedentary or light duty positions resulted in an annual loss of income in the amount of $55,744.00. Mr. Watson was 30 years old at the time of his injury and would have worked until he was at least sixty five years old. Ms. Vercillo determined that Mr. Watson's lost earnings and earning capacity is $2,054.156.00. Mr. Watson has incurred medical expenses in the amount of $28,017.05.

Mr. Watson has a seven year old child, John Watson. John Watson was born with several disabilities, including blindness. As a result of his injury, Mr. Watson has been prevented from fully participating in the process of raising his child. Mr. Watson cannot carry his son or run with him. Mr. Watson cannot take care of his son by himself because Michael Watson's inability to move around quickly and maintain his balance makes it impossible to keep up with the movements and constant energy of a young son.

IV. **Statement of Agreed Facts**

This is a product liability case in which the Plaintiff, Michael Watson, individually and on behalf of his son, John Watson, alleges that the Defendant, Electrolux Professional Outdoor Products, Inc. n/k/a Husqvarna Professional Outdoor Products Inc. ("Electrolux"), was negligent and in breach of warranty when it designed, manufactured and sold a Partner K2300 EL power cutter. Plaintiff further alleges that the Defendant's negligence and breach of warranty caused Michael Watson to sustain personal injuries and his son, John Watson, to suffer loss of consortium.

Electrolux denies that it was negligent or in breach of warranty, and denies that the power cutter was defective in any respect. Electrolux further denies that its conduct, or any alleged defect in the product, caused or contributed to the injuries sustained by Michael Watson or his son's loss of Michaels Watson's consortium.

Electrolux also claims that Michael Watson was negligent and his negligence contributed to his accident and injuries. Moreover, Electrolux alleges that Mr. Watson was aware of the danger and alleged defect he claims was associated with the use of the power cutter, and that his injury was caused by his unreasonable use of the power cutter notwithstanding this awareness. Finally, Electrolux claims that the plaintiff failed to provide it with timely notice of the alleged breach of warranty and that it was prejudiced by the lack of timely notice.

Stipulated Facts

Michael Watson is an individual residing in the Commonwealth of Massachusetts.

Partners Industrial Products, a division of Electrolux Professional Outdoor Products, Inc. n/k/a Husqvarna Professional Outdoor Products Inc. ("Electrolux") designed and manufactured the subject K2300 EL power cutter.

The plaintiff, Michael Watson, was injured on December 5, 2001 while using a Partner K2300 EL power cutter in the course of his employment with Modern Continental on the "Big Dig" in Boston, Massachusetts.

V.  **Contested Issues of Fact**

Whether Electrolux was negligent with respect to the design of the K2300 EL power cutter.

Whether any negligence by Electrolux was the cause of the plaintiff's accident.

Whether the K2300 EL power cutter was defectively designed.

Whether any defect in the K2300 EL power cutter was the cause of plaintiff's accident.

Whether the plaintiff's own negligence cause or contributed to his accident.

Whether the plaintiff was aware of the danger and defect he claims was present in the K2300 EL power cutter and whether, despite this awareness, he unreasonably used the power cutter at the time of his accident.

Whether the plaintiff gave the defendant timely notice of the alleged breach of warranty and, if not, whether the defendant was prejudiced by late notice.

The extent of damages sustained by Michael Watson and John Watson as a result of the December 5, 2001 accident, particularly Michael Watson's alleged loss of earning capacity.

VI.  **Jurisdictional Questions**

There are no jurisdictional questions.

VII. **Issues of Law**

The complaint alleges negligence and breach of warranty.  There is no dispute that Massachusetts substantive law and Federal procedural law apply to this case.

VIII. Requested Amendments to the Pleading

No amendments are necessary at this time.

IX   **Additional Matters to Aid in the Disposition of the Action**

The Plaintiff requests that this Court permit individual voir dire of prospective jurors.

X.   **Probable Length of Trial**

It is estimated that this case will require six to seven days to complete.

XI.  **Witnesses**

   1. Michael Watson (51 Manor St., Dorchester, MA): factual;
   2. Jonathan Ford (34 Potter Drive, Bellingham, MA): factual;
   3. Leslie Wilder, P.E. (150 Jennie Lane, Fairfield, CT): expert. B.S. in Mechanical Engineering from Columbia University in 1956.  M.S. in Mechanical Engineering from Stanford University in 1957. M.S. in Electrical Engineering from New York University in 1959;
   4. Amy Vercillo, M.S., C.R.C., C.D.M.S., L.R.C (115 Cedar St., Providence, RI): expert.  B.S. from Boston University in Rehabilitation Services in 1983 and M.S. in Rehabilitation Counseling from Boston University in 1984;
   5. Christopher Chiodo, M.D. (75 Francis St., Boston, MA): damages - via video tape.
   6. Michael Watson (121 East Cottage St., Boston, MA): factual;
   7. Janice Brady (51 Manor St., Boston, MA) factual;
   8. Mark Florentino (Chelsea, MA) factual;
   9. David Hendrickson (99 High St., Boston, MA): factual;
   10. Keeper of Records of the Brigham & Women's Hospital (75 Francis St., Boston, MA): factual;

11. Keeper of Records of Boston Medical Center (One Boston Medical Center Place, Boston, MA) factual;
12. Keeper of Records of the Boston Center for Physical Therapy (653 Summer St., Boston, MA) factual;
13. Keeper of Records of Bay State Physical Therapy (111 Willard St., Quincy, MA) factual;

XII. **Portions of Depositions or Interrogatories to be Offered**

    A. Rule 30(b)(6) Deposition of Husqvarna

| | | |
|---|---|---|
| pp. 38-54 | p. 82/ 17-24 | p. 102/ 4-7 |
| p. 57/ 8-24 | pp. 83-89 | p. 115/ 1-13 |
| p. 58 | p. 90/ 23-24 | pp. 119-122 |
| p. 59/ 1-2 | p. 91/ 1 | p. 123/ 1-19 |
| p. 60/7-9 | p. 96/ 2-24 | p. 128/ 15-24 |
| p. 61/ 7-12 | p. 97 | p. 129/ 2-18 |
| p. 72/ 6-21 | p. 98/ 1-16 | p. 142/ 9-24 |
| p. 76/ 3-24 | p. 100/ 11-24 | p. 143/ 1-14 |
| pp. 77-81 | p. 101 | p.159/ 7-9 |
| | p. 102/1 | |

    B. Husqvarna's Answers to Interrogatories
    C. Husqvarna's Supplemental Answers to Interrogatories

XIII. **Jury Instructions, Special Verdict Forms and Voir Dire**

See attached 1.) Plaintiff's Proposed Jury Instructions 2.) Plaintiff's Proposed Voir Dire Questions and 3.) Plaintiff's Proposed Special Verdict Form.

XIV. **Motions in Limine**

See attached 1.) Motion in Limine to Preclude Evidence of Alcohol and Drug Use, 2.) Motion in Limine to Preclude Evidence of Prior Drug Offenses and 3.) Motion in Limine to Preclude Collateral Source Benefits.

        The Plaintiff
By his attorneys

/s/ Thomas Drechsler
Thomas Drechsler (134840)
Jonathan E. Tobin (641509)
BYRNE & DRECHSLER, LLP
50 Redfield St.
Boston, MA 02122
617-265-3900


## CERTIFICATE OF SERVICE

    I, Jonathan E. Tobin, hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and that paper copied will be sent to those indicated as non-registered participants on February 21, 2007.

        /s/ Jonathan E. Tobin
Jonathan E. Tobin